MARY J. PADDOCK *et al.* v. PARK B. PULSIFER, *as Administrator with will annexed of David Robertson, deceased, et al.*

1. WILL—*Action to Cancel Deed—Good Faith—Burden of Proof.* R., a widower, nearly seventy years of age, having several grown-up sons and daughters, and being possessed of $1,100 of personal property and a tract of land of the value of $4,000 to $5,000, executed a will, directing that upon his death his real and personal property be converted into money, and after the payment of his funeral charges, expenses, etc., the proceeds be divided among his children, share and share alike, with the exception that his oldest daughter should receive $400 in addition to her share, and a grandson to receive $120. About two years afterward, while staying with Mrs. P., one of his married daughters, he was taken sick, and in a few weeks died. Before his death, but while he was sick, and physically and mentally in a feeble condition, he executed a conveyance of all of his real estate to Mrs. P., his daughter, for the nominal consideration of $2,600, but no money or other consideration was paid, and the daughter claims the land was intended to be a gift to her from her father. Soon after the death of her father, Mrs. P. conveyed the land, without consideration, to Mrs. B., her own daughter, with the understanding that she would convey the land to any person she requested. *Held,* That in an action brought by the executor and the other children of R. against Mrs. P. to cancel the deed from the father, the burden of proof was upon the daughter, Mrs. P., to clearly establish the perfect good faith of the transaction.

2. DEED, *Obtained by Fraud.* An examination of the record in this case shows sufficient testimony to sustain the judgment of the trial court canceling the deed from R., the father, to Mrs. P., the daughter, upon the ground that it was obtained fraudulently.

*Error from Cloud District Court.*

ON the 11th day of February, 1886, *Park B. Pulsifer*, as administrator with the will annexed of David Robertson, deceased, John Robertson, Isabel Temple and Mattie Ellis filed their petition against *Mary J. Paddock*, and Alice Bourgeois, Anna Mealy, Margaret Reid, David Robertson and Jessie Snowey, which, omitting caption, is as follows:

"Plaintiffs say: That on the 11th day of February, 1886, the plaintiff, Park B. Pulsifer, was duly appointed and qual-

ified, and letters of administration were granted to him, as administrator with the will annexed of the estate of David Robertson, theretofore deceased, by the probate court of Cloud county, Kansas.    That said David Robertson was the owner, during his lifetime, of the northwest quarter of section 32, township 5 south, range 1 west, in Cloud county, Kansas; that on or about the 25th day of November, 1885, the defendant, Mary J. Paddock, by fraud, misrepresentation, undue influence and deceit, obtained from said David Robertson what purports to be a warranty deed of the aforesaid premises to her; that at the time of the execution of the pretended deed as aforesaid, said David Robertson was in failing health of body, and was in such a feeble and weak state of mind as to be utterly incapable of transacting business, and that said pretended deed was obtained without any consideration whatever being paid therefor, and without the consent of said David Robertson.    On or about the 5th day of February, 1886, defendant Mary J. Paddock and Thomas Paddock her husband pretended to convey to defendant Alice Bourgeois the aforesaid land by deed, recorded in the office of the register of deeds of said county on February 8, 1886, but the plaintiffs allege that said Alice Bourgeois took said deed without any consideration whatever being paid by her or anyone for her, well knowing all the facts herein set forth as to the invalidity of the title of the defendant Mary J. Paddock, and such pretended sale and conveyance to said Alice J. Paddock is a sham, intended only for the purpose of aiding said Mary J. Paddock to defraud the plaintiffs out of their rights in the aforesaid land; that said David Robertson died on or about the 10th day of January, 1886, after having made a will which was duly probated by the probate judge of said county on the 10th day of February, 1886, and in which it is provided that the executor thereof shall sell all of the real estate of the defendant and convert the same into money.

"Wherefore, plaintiffs pray judgment that said pretended deed be set aside; and for such other and further relief as they may be entitled to."

On March 16, 1886, the defendants filed an answer containing a general denial only.    Trial was had at the October term of the court for 1887, without a jury.    The court made a general finding in favor of the plaintiffs that the deed from David Robertson to Mary J. Paddock, and the deed from

Mary J. Paddock and Thomas Paddock to Alice Bourgeois, for the land in controversy, be annulled, canceled, and held for naught. Subsequently, judgment was rendered in favor of the plaintiffs and against the defendants upon the general finding. The defendants, Mary J. Paddock and Alice Bourgeois, excepted, and bring the case here.

*B. R. Anderson,* and *J. W. Sheafor,* for plaintiffs in error.

*L. J. Crans,* and *Kennett & Peck,* for defendants in error; *Hugh Alexander,* for defendant in error Pulsifer.

The opinion of the court was delivered by

HORTON, C. J.: David Robertson died at the home of his married daughter, Mrs. Mary J. Paddock, in Cloud county, in this state, on January 10, 1886, aged about seventy. His wife died many years before. He had been suffering from paralysis nearly two years. He left surviving him several children. At the time of his death he owned $1,100 of notes. A few weeks before his death he had the legal title to and was in the possession of the northwest quarter of section 32, township 5, range 1, in Cloud county. Robertson executed a will on the 22d day of October, 1883. It was admitted to probate on the 9th of February, 1886. He directed in his will that his real and personal property be converted into money, and, after the payment of his funeral charges, expenses, etc., the proceeds to be divided among his children, share and share alike, with the exception that his oldest daughter, Mrs. Isabel Temple, should receive $400 in addition to her share, and the grandson, David Reid, should receive $120. During the years of 1883, 1884, and a part of 1885, he lived in Cloud county most of the time, with Mrs. Isabel Temple, as one of the family. Sometime in the summer or fall of 1885 he left Mrs. Temple's and went to Mrs. Mary J. Paddock's. Before leaving Mrs. Temple's, he told her he was going down to his farm and set out some shade trees and stay with his daughter Mary. Early in November, 1885, he was taken sick, and never recovered. Mrs. Temple called at her sister's every

two or three weeks to see her father.   When she called he was
very feeble.   He could not work, and was not able to help or
take care of himself.   During his sickness it was thought
necessary on account of his sufferings to administer to him
large quantities of whisky and morphine.   On the 25th of
November, 1885, David Robertson executed to his daughter
Mrs. Mary J. Paddock a deed for the tract of land in dispute,
and on the 5th of February, 1886, Mrs. Paddock and her
husband conveyed the land to her daughter, Mrs. Alice Bour-
geois.   The land is worth from $4,000 to $5,000.   No con-
sideration was paid by Mrs. Paddock to her father for the
conveyance.   When Mrs. Bourgeois received the deed, she
agreed to convey the land to any person her mother should
request.   In order that it might appear that a money consid-
eration passed for the deed from Mrs. Paddock to Mrs. Bour-
geois, Dr. Bourgeois, her husband, obtained the use of $500
for a few days from a bank.   This was handed to Mrs. Pad-
dock, but soon after returned to Dr. Bourgeois and by him
to the bank again.   Mrs. Paddock claims that she sold the
land to Mrs. Bourgeois for $2,600 and was paid that sum for
it, but upon the finding of the court we must assume that this
is not true.

In the brief for defendants below it seems to be conceded
that Mrs. Bourgeois was not a *bona fide* purchaser of the land.
The brief states: "If it is a fact that Mrs. Paddock, after
being frightened by the houndings of these people, at last
made a sham sale to Mrs. Bourgeois of the farm, this is an
evidence of weakness rather than of fraud."   This action was
brought to set aside and cancel the two deeds—one from
David Robertson to his daughter Mrs. Mary J. Paddock,
and the other from Mrs. Paddock and her husband to Mrs.
Bourgeois.   The contention is, that there was no evidence
before the trial court tending to show the deed to Mrs. Pad-
dock was procured by fraud, and as the court canceled the
deed upon the ground that it was obtained fraudulently, that
the judgment is wholly unsupported by any evidence.   In

46 — 43 KAS.

such a case as this, the burden of establishing the

**1. Will—action to cancel deed —good faith— burden of proof.** perfect fairness and equity of the conveyance to Mrs. Paddock was thrown upon her, in view of her father's age, sickness and feebleness of mind, and the close relation of the parties. Confidence was necessarily reposed in Mrs. Paddock. If that confidence was abused in procuring the deed, the trial court very justly set it aside. The deed purports upon its face to have been executed for $2,500, "cash in hand paid." This is much less than the value of the land. It is admitted by Mrs. Paddock that she paid nothing for the deed; and if she obtained it from her father upon the promise to pay $2,500 in money or in notes, without intending to pay for the same, or if she did not have the means of paying what she agreed to pay, this would be indicative of actual fraud upon her part. She claims, however, that her father gave her the land, and intended to give her the land without any consideration being paid. If this were true, Mrs. Paddock should have clearly established the perfect good faith of the transaction.

Story (1 Eq. Jur., § 309) states the rule thus:

"All contracts and conveyances whereby benefits are secured by children to their parents, are objects of jealousy, and if they are not entered into with scrupulous good faith and are not reasonable under the circumstances, they will be set aside, unless third persons have acquired an interest under them, especially where the original purposes for which they have been obtained are perverted or used as a mere cover."

The father, David Robertson, at the date of the deed was in his second childhood, therefore the entire relation of the parties was reversed; the father had become the child and the daughter had control of the father. Considering the influence and infirmities under which Robertson labored, the fact that Mrs. Paddock had his entire confidence, that the deed transferred to her without any consideration, all of his

**2. Deed, obtained by fraud.** real estate and thereby deprived his other children of any possible interest therein, there is ample evidence to sustain the judgment. Certainly, we cannot dis-

turb it upon the ground that it is not supported by any evidence.

In *Tracey v. Sacket*, 1 Ohio St. 54, it is said:

"Actual fraud . . . was not essentially necessary in order to set aside contracts in equity. . . . The acts and contracts of persons of weak understandings, and who are therefore liable to imposition, will be held void, . . . if the nature of the act or contract justify the conclusion that the party has not exercised a deliberate judgment, but that he has been imposed upon, circumvented, or overcome by cunning, artifice, or undue influence."

In *Jacox v. Jacox*, 40 Mich. 473, it is decided that—

"An equitable wardship arises where a son takes charge of his father's affairs in the belief that the latter is incompetent to manage them, and the father passively submits."

In *Highberger v. Stiffler*, 21 Md. 338, it is held that—

"Where a parent, through extreme age and infirmity, has become childish and depends upon her son for advice in all her affairs, contracts made by her in his favor are subject to the same strict scrutiny given to contracts of children in favor of their parents. In such a case it is not necessary to prove the exercise of overweening influence, misrepresentation, importunity, or fraud *aliunde* the act complained of."

In *Martin v. Martin*, 1 Heisk. (Tenn.) 644, Chief Justice Nicholson, in delivering the opinion, used the following language:

"But when to this is added that the father was far advanced in years, was greatly enfeebled in body and mind, actually verging upon mental incapacity, and was greatly troubled and uneasy in his mind, and that the son and agent uses his influence in procuring a deed which secures to himself more than two-thirds of his father's entire estate and to his brother the residue, to the total exclusion of two sisters and several grandchildren, the law raises the presumption of fraud, and this presumption can only be overturned by clear and satisfactory proof that the son and agent dealt with entire fairness and good faith in the transaction. It is incumbent on him to show affirmatively that his father comprehended fully the purport and effect of the conveyances, and that he

executed them freely and understandingly, knowing that he thereby divested himself of the absolute title of the lands."

See also 59 Am. Dec. 615, and the cases cited; *Yeamans v. James*, 27 Kas. 195; *Wills v. Wood*, 28 id. 400; 2 Pom. Eq. Jur., § 951.

Complaint is made because the deposition of Thomas Paddock was permitted to be read in evidence. Paddock was the divorced husband of Mrs. Mary J. Paddock. The objections to this deposition are not tenable. It was taken in New York city while the district court of Cloud county was in session. This is not a sufficient reason for rejecting a deposition. (*Northrup v. Hottenstein*, 38 Kas. 263; *Railway Company v. Morse*, 38 id. 271.) The deposition was offered as testimony against Mrs. Alice Bourgeois only. It was competent as to her, if incompetent against Mrs. Paddock. The deposition recited that Thomas Paddock was formerly the husband of Mrs. Mary J. Paddock, hence there was no error in rejecting the evidence offered to prove this fact.

Again, the motion to suppress and the objections to the deposition were made jointly by Mrs. Paddock and Mrs. Bourgeois. Their motions were for the exclusion of the whole of the deposition. If any portion of a deposition objected to is competent, the court is not obliged, upon a motion to exclude the whole, to separate and exclude the part that is incompetent only. (*Greer v. Higgins*, 20 Kas. 420; *Gano v. Wells*, 36 id. 688; *Smythe v. Parsons*, 37 id. 79.)

The evidence offered to impeach Mr. Paddock was properly rejected, because no foundation was laid by calling his attention to the matters attempted to be proved. (*Greer v. Higgins*, supra.)

The judgment of the district court will be affirmed.

. All the Justices concurring.