THERON S. HILL v. ORVILLA MILLER *et al.*

1. EVIDENCE — *Demurrer, Overruled — No Error.*   The evidence examined, and found, that the court did not err in refusing to sustain a demurrer to the evidence of the plaintiff below.

2. RECEIVING EVIDENCE — *Discretion of Court, not Abused.*   Receiving evidence in a case after the plaintiffs had rested and the defendant had introduced his testimony is a matter largely within the discretion of the trial court; and *held*, in this case, that the supreme court cannot say that the district court abused its discretion.

3. ——— *No Error.*   The instructions considered, and found, that the court committed no error in giving the same.

4. INSTRUCTIONS, *Properly Refused.*   The instructions requested by defendant examined, and found, that the court properly refused to to submit them to the jury.

5. UNDUE INFLUENCE — *Deed, Properly Canceled.*   An examination of the record in this case shows sufficient evidence to support the special findings of the jury, and judgment of the trial court in cancelling a deed from N. H. to T. S. H., upon the ground of undue influence.

*Error from Neosho District Court.*

ACTION by *Orvilla Miller* and others against *Theron S. Hill*, to cancel a certain deed.   Judgment for plaintiffs, at the December term, 1889.   The defendant brings the case to this court.   The opinion states the facts.

*Lapham & Brewster*, and *T. J. Hudson*, for plaintiff in error.

*C. A. Cox*, and *J. L. Denison*, for defendants in error.

Opinion by GREEN, C.: This was an action to set aside a deed made by Newell Hill to his brother Theron S. Hill, and dated June 4, 1887, and recorded the November following, to the southeast quarter of section 14, in township 27, range 17, in Neosho county, alleged to be worth, at a reasonable valuation, $4,000.

The plaintiffs below, Orvilla Miller and Dora McCowan, were daughters of Newell Hill; Alice Hill was the widow of his son, Cicero Hill; and John was a grandson. Newell Hill, with his wife and children, formerly lived in Richwood, Ohio, where they owned a home, which they sold, and afterward moved to the state of Illinois, where they purchased an 80-acre tract of land, taking the title in the name of the wife. The family moved upon this land, and improved it. The wife died in March, 1875. The farm was sold, the children joining in the deed with the father. The family came to Kansas, and the land in controversy was purchased, and the title was taken in the name of the father, Newell Hill. The family in Kansas consisted of the father, his son, Cicero, and daughters, Dora and Nora. Orvilla had married and remained in Illinois. A house was built upon the land purchased, and the place was otherwise improved. In January, 1878, the son and daughter were married; the former, to Alice Hill, one of the defendants in error; the latter, to John McCowan. The daughter went with her husband, and the son and wife made their home with the father. The other daughter was married in March, 1882, to a man by the name of North, and went back to Illinois to live, and died there in 1883. The son and wife lived upon the farm with the father until February 14, 1887, when the former died. Of the marriage there was born one son, John, the minor defendant in error in this case.

A short time after the son's death, Newell Hill went to his neighbor and physician and requested him to write to his younger brother, the plaintiff in error, who lived near The Dalles, in Oregon, where he was practicing medicine, to come

to him and take charge of his property. This letter was dated the 17th day of February, 1887. The brother came in response to the communication. It is claimed by the plaintiff in error that he attempted to reconcile certain contentions which seemed to have arisen between Newell upon the one part and Alice and Dora upon the other, so that proper care could be given to his brother and he could return to his home in Oregon, but that he was unsuccessful; that Newell finally proposed to Theron that he would deed him the land in controversy upon the condition that Theron would take care of him as long as he should live, see him decently buried, and assume a certain mortgage upon the place for $400 and an indebtedness of about $400 to another brother. It is claimed that, in compliance with this arrangement, Newell Hill deeded the land to his brother Theron S. Hill, on the 4th day of June, 1887. Newell died the December following, and his heirs brought this action to set aside such deed.

Certain questions of fact were submitted to a jury. The court reserved all other issues, to be determined by it. The jury returned the following questions and answers, submitted at the request of the defendant below:

"1. Did Newell Hill execute the deed to the premises in controversy with a full understanding of what he was doing at the time of such execution? Ans. No.

"2. At the time of the execution of said deed, was Newell Hill in possession of the ordinary mental faculties usual to men of his age? A. No.

"3. At the time of the execution of said deed, was said Newell Hill suffering from any disease of the mind? A. He was infirm, and in his dotage.

"4. If the jury answer the last question by 'Yes,' state what such disease was, and how long prior to said time he had been suffering from it. A. He suffered a number of years from rheumatism and dyspepsia.

"5. Was said Newell Hill forced to execute said deed to T. S. Hill? A. Yes; by the stronger mind over the weak.

"6. If the jury answer the last question by 'Yes,' state when and what kind of force was used. A. He was over-persuaded, and undue appliances resorted to, to obtain the same when executing deed.

"7. Did said Newell Hill, after the execution of said deed, speak about it to one or more persons? A. No.

"8. At such times, was he in possession of his ordinary mental faculties? A. For a man of his age and disease, we do not believe he was."

The court submitted the following questions to the jury of its own motion:

"Q. 1. Did Newell Hill, at the time he delivered the deed for the land in controversy to Theron S. Hill, possess sufficient mental capacity to enable him to deliver the deed in question, with an intelligent understanding by him, said Newell Hill, of the nature and effect of the transaction? A. No.

"Q. 2. Did Theron S. Hill obtain the deed for the land in controversy from Newell by the use of any undue influence? A. Yes."

I. The first error in which complaint is made is, that the court should have sustained the demurrer of the defendant to the evidence of the plaintiffs. The evidence in this case is very voluminous. The evidence was conflicting. It was properly a court case, but the judge saw fit to submit certain questions of fact to a jury. We have read all of the evidence in the record, and cannot say that the plaintiffs failed to prove the allegations of their petition.

II. The second assignment of error is, that the court allowed the plaintiffs, after they had rested their case and after the defendant had introduced his evidence and excused his witnesses, to recall a witness for the purpose of cross-examination; that one of the attorneys for the plaintiffs made an unwarranted and false statement in regard to the hostility of such witness. As to the order of the trial, the examination of witnesses, and the reception of further evidence, all were within the sound judicial discretion of the court trying the case, and we are not prepared to say, from an examination of the record, that the court abused its discretion.

The statement of counsel was to the effect that the plaintiffs had been misled; that the witness was hostile, and at another term of court had gone into the Indian Territory at the solicitation of other parties. These remarks were made to

the court as reason why the plaintiffs should be permitted to recall the witness.    We fail to see wherein the rights of the plaintiff in error were prejudiced by this action of the court.

III.   The plaintiff in error complains that the evidence did not warrant the court in giving instructions 6 and 7, which read as follows:

"6.  The evidence shows that Newell Hill, at the time of the alleged delivery of the deed, was a man well advanced in years, being of the age of 72 or 73, or thereabouts.    Theron S. Hill was the brother of Newell Hill, and at the time of the transaction in question was probably, as shown by the evidence, about 54 years old.    The evidence was also to the effect that Theron was a physician, and that, for some time prior to his obtaining the deed in question, he was living in the same house with his brother, the only other occupants of the house being a young man and his wife, who were tenants on the premises; that he (Theron) was engaged in taking care of his brother, nursing him in his sickness and administering to his wants.    Evidence has been introduced tending to show that Theron acted to some extent, in the care of his brother, in his professional capacity as a physician, but to what extent and how much you will ascertain from the evidence.    The evidence further shows that Newell Hill was in poor health. The answer of the defendant, Theron Hill, alleges, and the plaintiffs admit, that at the time of the death of Cicero Hill, which was in February, 1887, the said Newell Hill was aged, infirm, and almost helpless; and there is no evidence that he substantially improved any for the better from that time until his death.

"7.  On such evidence in the case as is undisputed, and which I indicated in the preceding instruction, the relation existing between the two brothers at the time Theron obtained the deed in question, is what in the law is called a 'fiduciary' or 'confidential' relation; and the law will require of Theron S. Hill the utmost degree of good faith in the transaction between him and Newell Hill, which resulted in Theron S. Hill obtaining the deed; and where the relations existed between the two brothers, as I have indicated in this and the preceding instruction, the law presumes, in the first instance, and in the absence of evidence to the contrary, that a brother occupying the relation to another brother that Theron occupied to Newell possessed that superiority and influence over Newell, and Newell reposed that degree of con-

fidence and dependence in and upon Theron, which is the natural result of such relation; and under the circumstances, when such a condition of things is shown, the law shifts the burden of proof upon Theron S. Hill to show affirmatively, as far as practicable, that the obtaining of the deed in question was done without fraud, artifice, or other undue means, and that he gave a just and adequate consideration for the said deed. As to the consideration that was given, the defendant, Theron, alleges, in substance, that it was as follows: That he found his brother in a condition requiring care and attention, of which he was destitute; that said Theron abandoned his business in Oregon, and promised and agreed with Newell Hill to care for his said brother and maintain and support him as long as he lived, and see him decently buried after his death, and to pay certain debts of the said Newell Hill. It was competent in law for the parties to make this contract; and if you find that such a contract was made without fraud or undue means used by T. S. Hill to effect it, and that the consideration received by Newell Hill, under all the surrounding circumstances, was just and adequate, then the deed to Theron Hill is valid, and should stand."

The answer of the defendant below alleged that his brother, at the time of the death of his son, Cicero, was aged, infirm, and almost helpless; that, when he came to him, he was old and infirm. These admitted facts, taken in connection with the evidence, justified the court in giving these instructions. Complaint is made as to other instructions, but we think they are not subject to the objections urged by the plaintiff in error. The law was properly stated, in our opinion, in the instructions the court gave.

IV. It is next contended that the court erred in refusing to give certain instructions requested by the defendant. Complaint is made especially in the refusal of the court to give the following instruction:

"To be undue, the influence exerted must be equivalent to moral coercion. It is not enough to show that the grantor, Newell Hill, made a different disposition of his property than he intended. One may yield to the persuasion of affection or attachment, and allow such sway to be exerted over his mind, and yet the law does not regard such influence as undue. He

must have been constrained to do what was against his will; otherwise, the law will not interfere."

We do not think the court erred in refusing this and the other instructions requested. The court submitted certain facts to the jury under proper instructions. The court, as a chancellor, reserved to itself the decision of the case. The rule as to mental weakness has been stated :

"It is well settled that there may be a condition of extreme mental weakness and loss of memory, either congenital or resulting from old age, sickness, or other cause, and not being either idiocy or lunacy, which will, *without any other incidents or accompanying circumstances,* of itself, destroy the person's testamentary capacity, and, *a fortiori,* be ground for defeating or setting aside his agreements and conveyances. It is equally certain that *mere* weak-mindedness, whether natural or produced by old age, sickness, or other infirmity, unaccompanied by any other inequitable incidents, if the person has sufficient intelligence to understand the nature of the transaction, and is left to act upon his own *free* will, is not a sufficient ground to defeat the enforcement of an executory contract or to set aside an executed agreement or conveyance. If, as is frequently, if not generally, the case, the mental weakness and failure of memory are accompanied by other inequitable incidents, and are taken undue advantage of through their means, equity not only may, but will, interpose with defensive or affirmative relief. Finally, in a case of real mental weakness, a presumption arises against the validity of the transaction, and the burden of proof rests upon the party claiming the benefit of the conveyance or contract to show its perfect fairness and the capacity of the other party." ( Pom. Eq. Jur., § 947.)

" The doctrine of equity concerning undue influence is very broad, and is based on principles of the highest morality. It reaches every case, and grants relief where influence is acquired and abused, or where confidence is reposed and betrayed. It is especially active and searching in dealing with gifts, but is applied, when necessary, to conveyances, contracts, executory and executed, and wills." Id., § 951.

The rule was stated in the case of *Haydock v. Haydock*, 34 N. J. Eq. 574:

"I take the rule to be settled, that where a person, enfeebled

in mind by disease or old age, is so placed as to be likely to be subject to the influence of another, and makes a voluntary disposition of that property in favor of that person, the courts require proof of the fact that the donor understood the nature of the act, and that it was not done through the influence of the donee." See, also, *Paddock v. Pulsifer*, 43 Kas. 718, and authorities there cited.

V. The other errors complained of are, that the court should have set aside the special findings of the jury, and granted the plaintiff in error a new trial. Substantially the same questions are raised by these assignments as those already considered. It will be observed that eight questions were submitted at the request of the defendant, and all were answered by the jury. If there was no evidence bearing upon these questions, why should the defendant have asked the court to submit them to the jury?

An examination of the entire record in this case satisfies us that the district court stated the law correctly to the jury in submitting the special questions of fact, and that there is evidence to support the findings of the jury and the judgment of the court.

It is recommended that the judgment of the district court be affirmed.

By the Court: It is so ordered.

All the Justices concurring.