H. G. SMITH *et al.*, *Appellees*, v. CHARLES C. SMITH,
*Appellant.*

No. 16,878.

### SYLLABUS BY THE COURT.

1. GIFTS—*Validity—Presumption—Burden of Proof.* The rule
with respect to the presumption of validity and the burden
of proof in cases of wills and testaments (*Ginter v. Ginter*,
79 Kan. 721) does not apply to cases of gifts or contracts
*inter vivos.*

2. ——— *Undue Influence—Presumption—Burden of Proof.* In
the case of a gift or voluntary conveyance *inter vivos*, where
the donor is a widow enfeebled in mind by disease or old age,
and the person benefited is her son, with whom she makes
her home, equity raises the presumption that the gift or volun-
tary conveyance was brought about by undue influence, and
the burden is upon the party benefited to show affirmatively
that the transaction was fairly conducted as if between
strangers.

Appeal from Reno district court. Opinion filed
March 11, 1911. Affirmed.

*F. F. Prigg*, and *C. M. Williams*, for the appellant.
*F. P. Hettinger*, and *F. L. Martin*, for the appellees.

The opinion of the court was delivered by

PORTER, J.: Adaline Smith died in 1908, intestate,
owning an undivided half interest in a farm in Reno
county, consisting of 160 acres. The parties to the
appeal are her heirs at law. A few months before her
death she executed and delivered to the appellant, who
is her son, deeds purporting to convey her interest in
the land. The appellees sued the appellant to cancel
the deeds and asked that the land be partitioned.
Henry O. Smith originally owned the land and died
intestate, in 1899, leaving his widow, Adaline Smith,
and the parties to this action his only heirs at law.

Soon after his death the widow and children entered into the following written agreement:

"We, the undersigned heirs of the estate of H. O. Smith, deceased, do hereby agree that Mrs. Adaline Smith shall keep all of the home place for life; then it to be sold and divided equally among the heirs."

In the petition it was alleged that at the same time there was a verbal agreement between all the parties that the appellant should reside with his mother on the farm, cultivate the same, and in consideration of the rents thereof should clothe and care for his mother the remainder of her lifetime, and should pay all taxes against the land. The petition then alleged that a few months before his mother's death the appellant, in disregard of his written agreement, and by means of importunities, threats, misrepresentations and undue influence, prevailed upon her to execute deeds conveying the title of the land to him; that at the time the deeds were executed Adaline Smith was incapable of making a valid conveyance, by reason of being old, sick and of feeble mind; that the appellant paid no consideration whatever for the conveyances; and that they were made without the knowledge or consent of the appellees.

The answer specifically denied the averments of fraud and undue influence in procuring the execution of the deeds or that the grantor was incapable of making valid conveyances, and as a further defense alleged that the written agreement entered into between the heirs of Henry O. Smith had no reference to the undivided portion of the homestead and was made without consideration, and therefore not binding upon the appellant, and that since its execution the written agreement had been altered by interlining the word "equally" in the last line thereof. The court found generally for the appellees and against the appellant.

The first contention is that there was no competent evidence showing the incapacity of Adaline Smith to

make the conveyances. It is said that there was only one witness, in addition to the appellees themselves, who testified that she was mentally incapacitated from understanding the nature of her action in executing the conveyances. The objection that most of the witnesses were interested parties goes only to their credibility. Besides expressing their opinions, the witnesses testified to the facts upon which their opinions were based and which tended to show that Mrs. Smith, who at the time of her death was seventy-nine years of age and had been in poor health about two years, was confined to her bed most of that time, and was mentally incapacitated by feebleness and old age from making a valid conveyance. Although the witnesses were nonexperts, they were competent to testify respecting the mental capacity of Adaline Smith, and the weight of their testimony was a question for the jury. (*Baughman v. Baughman,* 32 Kan. 538; *Howard v. Carter,* 71 Kan. 85, 91, 92.) There was a sharp conflict in the evidence on this point, but there was substantial and competent evidence to support the findings of the trial court. (*Hudson v. Hughes,* 56 Kan. 152; *Medill v. Snyder,* 61 Kan. 15, 20.)

The main contention is that there was no testimony to sustain the issue as to undue influence; and in this connection it is insisted that there was a presumption in favor of the conveyances having been executed fairly and that the burden of showing the contrary rested upon the appellees. In support of this claim the appellant relies chiefly upon *Ginter v. Ginter,* 79 Kan. 721. The instrument there attacked was a will; this is a conveyance by deed, a gift between living persons. The appellant admits that he paid nothing for the conveyances except the nominal consideration of one dollar. There was a confidential and fiduciary relation existing between him and his mother. She was old, and feeble in health. She lived at his home, under an agreement by which he was to care for her in her old

age. On April 8, 1907, he had a quitclaim deed prepared conveying to him the west half of the home place. He selected the witnesses to be present when the deed was to be executed, and arranged for a justice of the peace to come to the house where his mother signed and acknowledged it. Two months afterward, having heard in some way that his mother had but an undivided interest, he had a warranty deed prepared conveying to himself an undivided half interest in the land, again selected the witnesses to be present, and had his mother sign and acknowledge the instrument before an officer in their presence. None of the other heirs was present or knew anything about the conveyances. These circumstances were sufficient to raise the presumption of unfairness in the transaction, and equity at once placed the burden of proof upon the appellant to meet this presumption—the obligation to explain by proof showing that his mother was free from undue influence at the time she made him a gift of her property. (*Paddock v. Pulsifer,* 43 Kan. 718; *Hill v. Miller,* 50 Kan. 659.)

The opinion in *Ginter v. Ginter,* supra, expressly recognizes certain exceptions to the rule which it was held governed that case; and within these exceptions the present case falls beyond question. The opinion quotes at length (pp. 744, 745) from the case of *Parfitt v. Lawless,* 2 Prob. & Div. (Eng. 1872) 462, where the English court refused to apply the doctrine which obtains in relation to gifts *inter vivos* to the case of a will, stating the rule as applied to gifts *inter vivos,* as follows:

"In equity persons standing in certain relations to one another—such as parent and child, man and wife, doctor and patient, attorney and client, confessor and penitent, guardian and ward—are subject to certain presumptions when transactions between them are brought in question; and if a gift or contract made in favor of him who holds the position of influence is impeached by him who is subject to that influence, the

courts of equity cast upon the former the burthen of proving that the transaction was fairly conducted as if between strangers—that the weaker was not unduly impressed by the natural influence of the stronger, or the inexperienced overreached by him of more mature intelligence. . . . In the first place, in those cases of gifts or contracts *inter vivos* there is a transaction in which the person benefited, at least takes part, whether he unduly urges his influence or not; and in calling upon him to explain the part he took, and the circumstances that brought about the gift or obligation, the court is plainly requiring of him an explanation within his knowledge. . . . A more material distinction is this: the influence which is undue in the cases of gifts *inter vivos* is very different from that which is required to set aside a will. In the case of gifts or other transactions *inter vivos* it is considered by the courts of equity that the natural influence which such relations as those in question involve, exerted by those who possess it to obtain a benefit for themselves, is an undue influence. Gifts or contracts brought about by it are, therefore, set aside unless the party benefited by it can shew affirmatively that the other party to the transaction was placed in such a position as would enable him to form an absolutely free and unfettered judgment. . . . The law regarding wills is very different from this."

Another case cited with approval (79 Kan. 747) is that of *Bancroft v. Otis,* 91 Ala. 279, where it was said in the opinion that the authorities are almost too numerous to be cited which hold that the rule imputing undue influence to confidential relations in respect of transactions *inter vivos* has no application to wills, and that before the presumption obtains in the case of a will "something in addition to the mere existence of confidential relations must be shown; as, that the proponent initiated the preparation of the instrument, or wrote it himself, or gave directions as to its contents to the draughtsman, or selected the witnesses to be present at its execution, and the like; or, in short, that the beneficiary, whose interest under the paper is attacked, was as a matter of fact—aside from mere pre-

sumption of law—active in respect to, or in some way connected with, the preparation and execution of the alleged will."

Numerous additional authorities are cited in the opinion in the Ginter case in support of the well-established distinction between the rules as to the burden of proof in the two classes of cases, and the court then proceeds to declare the rule governing the presumptions as to the validity of wills and the burden of proving undue influence with respect to the making of them, but nothing there said in any way supports the contention of the appellant in the present case.

The confidential relations existing between the appellant and his mother having been clearly established, a presumption arose of undue influence, and the burden rested upon him to show that the transaction was free from such influence.

In addition to the presumption which in equity arises from the situation of the parties and their relations to each other, the circumstances under which the conveyances were obtained are suggestive of unfairness on the part of the appellant amounting to undue influence. The fact that he initiated the proceedings, directed the preparation of the deeds, arranged for their execution, selected the witnesses to be present, and that none of the other members of the family was informed of the transactions, were circumstances hardly to be overcome by his denial of undue influence and the testimony of witnesses that the grantor appeared to understand what she was doing.

Since the conveyances were rightly set aside on the ground that they were obtained by undue influence, it becomes unnecessary to consider the contention that the written agreement between the heirs of H. O. Smith was testamentary in character and passed no present interest in the land, that it was without consideration, or that it was altered after the appellant signed it.

The judgment is affirmed.