No. 20,049.

KATE BELLE COBLENTZ, *Appellee*, v. DAVID PUTIFER et al.,
*Appellants*.

SYLLABUS BY THE COURT.

1. GIFTS—*Inter Vivos—Undue Influence—Burden of Proof.* Rule followed that persons enjoying a confidential relationship with the grantor of gifts *inter vivos* have the burden of showing that such gifts were made without undue influence.

2. SAME—*Undue Influence—Question for Jury.* Rule followed that the fact of undue influence is ordinarily a proper question for the jury.

3. SAME. The facts surrounding gifts of land and personalty by a mother to her three sons about three days before her death and during her last illness, and other attendant and related circumstances, examined and held sufficient to present a fair question of undue influence in an action by a daughter who was deprived of a share of her mother's estate by the gifts in controversy.

Appeal from Reno district court; FRANK P. HETTINGER, judge *pro tem.* Opinion filed April 8, 1916. Affirmed.

*C. M. Williams*, of Hutchinson, for the appellants.

*F. L. Martin*, and *Van M. Martin*, both of Hutchinson, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: The plaintiff is the daughter of Joseph Putifer and Lucy A. Putifer, his wife. The defendants are her three brothers. The father died about 1896. The mother died in 1906. Three or four days before the mother's death, she executed deeds of all her real estate to her three sons, and also executed a bill of sale to them of all her personal property. The result cut off the daughter without a penny or a penny's worth of her mother's property.

The plaintiff brought this action against the defendants to set aside the deeds and bill of sale and for an accounting and partition, and charged that the conveyances were made by her mother through the undue influence of her brothers, etc.

Part of the evidence tended to show that the mother's estate originated and grew out of the unadministered estate of

the father, who had been a tenant farmer, and also from the labor of the plaintiff and her brothers during their minority. The daughter, being the eldest, left home after reaching her majority, and there is some unpleasant reading in the record as to the lack of affection between the sister and her brothers which occasioned her leaving and may have tended to prejudice her in her mother's estimation.

The general verdict was for the plaintiff, and certain special findings were made by the jury:

"Q. 4. Did Lucy A. Putifer execute the deeds in question by reason of undue influence of the defendants, or either of them, as defined by the instructions of the court herein? A. 4. Yes.

"Q. 5. If you answer the last above question in the affirmative, then which of the defendants exercised such influence? A. 5. All of them.

"Q. 8. Did Lucy A. Putifer, at the time she executed the deeds in question, believe and understand that a large portion of the property conveyed by said deeds had been accumulated and paid for by the defendants? A. 8. No.

"Q. 9. Did the plaintiff perform any labor or contribute any money or property towards procuring the property conveyed by said deeds. A. 9. Yes.

"Q. 10. If you answer the last question in the affirmative, then when and how was such contribution made? A. 10. By leaving her personal property with her mother when she left home."

While several errors are assigned, the one chiefly relied upon is that there was no evidence to support the special findings of the jury. We can not agree with this contention of appellants, although the evidence is mostly circumstantial. The hostility of the brothers toward their sister is clear. At one time when she proposed to come home for a short visit to her mother, one of the brothers wrote:

"I am running the place at present. I will answer your letter myself. We are too busy with our own troubles to be annoyed with visitors, besides we can not afford to make your living for you."

This, of course, does not go far to prove undue influence, but it is one of a number of circumstances which showed the confidential and exclusive relationship between the mother and the plaintiff's brothers—that they did n't want her, a mere visitor (?), coming home, and one brother's assuming to answer her letter himself. It was clearly a case where the burden of overcoming the presumption of undue influence was properly imposed on defendants. (*Smith v. Smith,* 84 Kan.

242, syl. ¶ 2, 114 Pac. 245.) Nor can it be said that there was a total want of evidence tending to show undue influence. It was shown that the brothers affected to believe that their sister was not of good character and called her bad names, but whether in their mother's presence is not clear; the neighbors had been telling the mother "lies" about plaintiff; soon after plaintiff left home the mother told a neighbor that "Belle was a good girl," and the mother blamed other people entirely for Belle's leaving home. There is circumstantial evidence that some of plaintiff's letters were withheld from the mother; about six weeks before her death the mother said she had not heard from Belle for some time, and did n't know why she did n't come home. It is tolerably clear that the attitude of the brothers constrained the plaintiff to leave home, and restrained her from returning more frequently to visit her mother—to keep alive and warm the natural affection and esteem which should exist between them. Even in the mother's last illness, which was known to be fatally impending, the evidence justifies the inference that the brothers did not even advise their sister that their mother was ill. All the news they sent her was to tell her that their mother was dead. The fact that the deeds and bill of sale were made during the mother's last illness is itself an evidential circumstance worthy of note. We think there was sufficient evidence of undue influence to submit the case to the jury. (*Acker v. Norman,* 72 Kan. 586, 84 Pac. 531; *Avery v. Howell,* 96 Kan. 657, 153 Pac. 532.)

As to the other assignments of error, which are scarcely pressed, it is sufficient to say that the admission of the letters from the plaintiff to her mother was competent; that defendants' demurred to the evidence was properly overruled. So, too, the overruling of the motion to set aside findings 4 and 5.

This case is not much of a lawsuit, notwithstanding it has been tried three times. And the plaintiff's case is about as strong in equity as it is in law. It is urged that the mother's estate, which was virtually family property and its natural accumulations, was augmented by the labor of the sons. It was likewise augmented by the labor of the daughter who in maidenhood had toiled in the fields to feed the defendants and to help keep the family and family property together. Perhaps

the sons have claims against the estate for services since their majority. That matter is not in shape for us to decide. The plaintiff also left some of her own chattels in the family pool when she left home. These helped to earn and increase the family property. There is no objection to taking all these matters into consideration in any accounting to be had.

The plaintiff has prevailed three times before the jury. (*Coblentz v. Putifer,* 81 Kan. 905, 106 Pac. 1011; *Coblentz v. Putifer,* 87 Kan. 719, 125 Pac. 30.) It is unlikely that a jury would ever return any other verdict than for the plaintiff. Indeed, appellants virtually concede this. They say:

"Do not send the case back again to be retried before a jury, where again human sympathy will be such a dominant factor in the procuring of an *unjust* judgment."

As the case now comes before us, we think some adjective more apt than "*unjust*" could be used to characterize this judgment; and since no error is apparent, the judgment must be affirmed.