No. 27,938.

CARRIE GROTHAUS et al., *Appellees*, v. P. J. VAN CLEAVE, *Appellant*.

(264 Pac. 1055.)

SYLLABUS BY THE COURT.

1. DEEDS—*Undue Influence—Fiduciary Relation.* In an action by daughters of a deceased father to set aside a deed to his son, the proceedings considered, and *held:* (*a*) The evidence was sufficient to support a finding that fiduciary relationship existed between the father and son which placed upon the son the burden of showing good faith in transactions had between them, and (*b*) that the son failed to satisfactorily explain or to show the good faith of such transactions.

2. DEEDS—*Delivery—Evidence.* And further, the evidence was sufficient to support a general finding in favor of the daughters, which included a finding that there had been no delivery of the deed in question.

Appeal from Smith district court; WILLIAM R. MITCHELL, judge. Opinion filed March 10, 1928. Affirmed.

*E. S. Rice, W. S. Rice,* both of Smith Center, and *Bernard McNeny,* of Red Cloud, Neb., for the appellant.

*A. W. Relihan, T. D. Relihan* and *J. T. Reed,* all of Smith Center, for the appellees.

The opinion of the court was delivered by

HOPKINS, J.: The action was one to set aside a deed to certain real estate on the ground of lack of mental capacity of the grantor, fiduciary relation between the grantor and grantee, undue influence upon the grantor and nondelivery. Plaintiffs prevailed, and defendant appeals.

The facts briefly are these: The deceased, father of these litigants, had for many years lived in Smith county, and at the time of his death was possessed of 160 acres of land (in controversy), a Ford automobile worth $125, $1,400 in cash, and a mortgage for $2,500. Following the death of his wife in April, 1924, he first lived with his daughters and then with a grandson, defendant's son, and then in February, 1925, went to live with the defendant at Reamsville, a small inland town some fourteen miles from Smith Center. The defendant operated a grocery store. The plaintiffs lived some miles away on farms of their own. On February 5, 1925, deceased went alone to Smith Center to the office of Henry Clark, an old friend,

Deeds, 18 C. J. pp. 427 n. 51, 438 n. 62, 445 n. 34; 8 R. C. L. 1034.

and had him draw a deed conveying the 160 acres of land to his son, the defendant. A room was built for deceased at the son's house and he resided there until his death on July 5, 1925. There was evidence that some four weeks before he died he requested his son and daughter-in-law to go to their store and remove certain papers belonging to him from the safe; that the son's wife took a pillow slip, got the papers, returned to the room and handed them over to him; that the only persons present were deceased, his son and wife, and a carpenter, Hancock, who was building the room onto the son's home for the father; that after he was handed the papers, he handed the deed back to her saying that he intended it to be for Pete, the son; that he made certain assignments of the money he had in the bank to Pete. The witness Hancock testified there was no actual handing of the papers to the son, and that the son said nothing, did not acknowledge the receipt of the deed or the certificates of deposit in any way, did not thank his father or "open his head," and that he looked shocked. The son and his wife then took the papers back to the store and put them in the safe. Deceased's daughters were present during his last illness and helped to care for him. After the funeral there was a conversation between them and defendant as to paying the funeral expenses, and the latter remarked to let it go, that he didn't know whether there was money enough to pay them from the estate. Later one of the daughters had another conversation with him in which he told her he had paid the expenses and "drawed out" the money in the bank; that his father had given it to him. He also claimed that the father had given his automobile to his (defendant's) son. Two neighbors testified the deceased made statements that he intended to keep his property as long as he lived, and when he died he wished his children to have it in equal shares. The testimony of the notary who drew the deed was that the deceased appeared to be rational at the time of the transaction. The defendant testified that he had said nothing to his sisters about the delivery to him of the deed because his father had asked him not to. It also appears that the father's paper were removed from the bank in Smith Center and put in the safe in the son's store on the suggestion of the son that they would be more accessible to him.

The principal questions in the case are as to whether there was an actual delivery of the deed, and if delivered, whether through

the undue influence of the defendant, and whether a fiduciary relationship existed between father and son.

In rendering judgment the trial court had a statement made of record in which, among other things, it was said:

"They [plaintiffs] do urge two things, they urge the deed was not delivered, and that there was a fiduciary relation existing between the defendant and his father. If the facts show a fiduciary relation existed between them it would be the duty of the son, the defendant, to show good faith in all the transactions that led up to the execution and delivery of the deed. The evidence as to a fiduciary relation is almost entirely circumstantial in this case. Possibly one exception; there is a statement by one of the witnesses, . . . that the old gentleman, Van Cleave, the father, took his papers out of the bank down there because his son wanted him to, and took them up and put them in his son's vault. This is undenied. The further circumstances show that the son built a room on his house to take care of his father, shows that he expected to go there and live and make his home there the rest of his days, and did. It is not the natural thing for a father to give all of his property to one of his children, and disinherit the others, but under the defendant's story in this case, that is just exactly what his father did, gave him all of the property, and left the daughters without any. But he could do that if he wanted to, and it was honestly and fairly done. He told his old neighbors up there in his own neighborhood that he wanted his children to share equally in the property. . . . I believe taking the circumstances altogether, they do so tend to show fiduciary relation. The evidence about the delivery of the deed is rather unsatisfactory . . . as far as the actual delivery of the deed is concerned. . . . Of course, if the burden is upon the defendant to show good faith, he hasn't shown it, I don't believe, on his part. The finding of the court will be that the deed should be set aside.

"I will make the further finding, each party to this suit is found to be the owner of an undivided one-third interest in the land described in the petition, and then I will order the land partitioned."

The defendant's attempted explanation of the various happenings, including assignment of the two certificates of deposit transferring $1,400 in cash and the alleged gift of the automobile were clearly unsatisfactory. It was a fact case resolved by the trial court against the defendant on sufficient evidence. The general finding of the court for plaintiffs included a finding of nondelivery of the deed.

The judgment is affirmed.