## No. 34,651

ORABELLE OVERSTREET, LEBURN K. PALMER, DALE C. PALMER, NADINE ECKEL, CRETA SEWARD, PEGGY LOUISE MANGUS, DARLENE HALL and ELLIS BEADLES, *Appellees,* v. ROLDEN BEADLES and MATTIE A. BEADLES, His Wife, *Appellants.*

(101 P. 2d 874)

Opinion filed May 4, 1940.

*R. T. McCluggage, Clem H. Silvers* and *L. J. Bond,* all of El Dorado, for the appellants.

*F. J. Leasure, K. M. Geddes, R. C. Woodward* and *H. Pauline Woodward*, all of El Dorado, for the appellees.

The opinion of the court was delivered by

DAWSON, C. J.: This was an action to set aside certain deeds to Butler county lands. Plaintiffs were a daughter and several grandchildren of the late Mrs. Mary A. Beadles, of Butler county. The defendant was her son. He and his wife lived on the old home farm with his mother for many years—with the not unusual result that when she died he was in possession of some unrecorded deeds to certain lands in which his mother had held an interest, about which deeds, however, the other heirs knew nothing.

It appears that on September 10, 1897, one William M. Beadles, of Butler county, died testate, seized of a farm near Leon which he disposed of by devising a life interest to his surviving spouse, Mrs. Mary A. Beadles, with remainder to their four children, Effie, Maxie, Orabelle and Rolden. Effie and Maxie married, had children, and died. Their children, together with Orabelle, are the plaintiffs in this action. Rolden Beadles, a son of William and Mary, is the defendant.

In the years that followed the death of William, oil was discovered on the old home farm—just how extensively is not shown; but the mother's bank ledger sheets showed that $70,000 in oil royalties had passed through her hands in the last fifteen years of her life.

In 1920 Mary A. Beadles and her son Rolden Beadles acquired a quarter section of land, known as the Overton land, which was situated near the old home farm. From the revenue stamps attached to the deed, it is inferable that the consideration was $8,000. The title was taken in the names of mother and son. On October 7, 1930, another tract of land lying near the Beadles farm, consisting of 120 acres, and known as the Creek land, was bought by the mother and son. The consideration was $6,050. Two of the mother's checks, one for her half the purchase price, and another for $2,000, were paid out of her bank account the day after the sale.

The mother, Mrs. Mary A. Beadles, died on June 21, 1937, at the age of eighty-seven years. Four days later two deeds whose validity is challenged in this lawsuit were filed for record in the office of the register of deeds. The first was a deed from Mary A. Beadles to the defendant Rolden Beadles, dated December 16, 1927, with the notarial acknowledgment of Nina S. Jones, notary public,

conveying the grantor's undivided one-half interest in the Overton land (160 acres described). The second was a deed from Mary to Rolden, dated October 16, 1930, conveying her undivided one-half interest in the Creek land (120 acres described).

Plaintiffs' petition contained the usual allegations of fact, their ownership in common of the lands described, that at the time of Mary's death she was over eighty years of age and feeble in mind and body, that defendants Rolden and wife made their home with Mary, that the defendant Rolden was her adviser and business manager, and that a relationship of trust and confidence existed between them, that Rolden caused the deeds purporting to convey the mother's interests in the described lands to be recorded immediately following her death. Plaintiffs further alleged that the deed bearing the date of December 16, 1927, purporting to convey to Rolden his mother's interest in the Overton land was a forgery, and if it did contain her signature the same was procured by false and fraudulent misrepresentation. The petition also alleged that the deed was given without consideration, that the grantor was under the influence and domination of the defendant, that she was suffering from senile dementia and was incapable of exercising her own free will at the time of the deed's purported execution.

Plaintiffs further alleged that on October 4, 1937, a deed was filed for record, purporting to convey the Overton land from defendant Rolden Beadles to his wife Mattie A. Beadles, and that such conveyance was made for the purpose of defrauding the plaintiffs.

In a second cause of action, the deed dated October 16, 1930, purporting to convey the interest of Mrs. Mary A. Beadles in the Creek land to Rolden was assailed on grounds of infirmity similar to those alleged in the first cause of action; and it was alleged also that the filing for record of a deed conveying the Creek land from Rolden to his wife was made under the same conditions and for the same purpose.

Plaintiffs concluded their petition with a prayer for specific, general and equitable relief.

Defendants' answer contained a general denial and certain admissions and alleged that Mrs. Mary A. Beadles executed the challenged deeds with full knowledge and understanding of their nature, without any undue influence, and for a good and valuable consideration.

The cause was tried by the court without a jury. The evidence extends to more than ninety pages of the abstract and counter ab-

stract. It tended to show that a fiduciary relationship did exist between defendant and his mother, and that he gave no consideration for the deeds which he withheld from the record for so many years, but which he promptly recorded after his mother's death. One remarkable feature of the plaintiffs' evidence tended to show that the notary who took the acknowledgment of the deed to the Overton land had been duped into the belief that the person executing it was defendant's mother, when in fact it was some unknown person impersonating the mother. Defendant and his wife drew checks on the mother's bank account. Defendant transacted his mother's business, and was irritable, vulgar and contemptuous towards the plaintiffs when they inquired about family business matters in which they had a legitimate interest. The mother was about seventy-seven years old when she executed and acknowledged the deed to the Overton land—if she did execute it (which was persuasively disproved), and eighty years old when the deed to the Creek land was dated.

The trial court made detailed findings of fact, mostly favorable to plaintiffs, none adverse to them. Some of these read:

### "EIGHTH

"There is nothing in the testimony to show when or how the deed to the Overton land, and acknowledged before Nina S. Jones, got into the bank box of Mary, A. Beadles, but it was there either in the winter of 1930 or the spring of 1931, at which time Rolden came to the bank and asked to see Mr. Marshall privately, and he then stated that his mother desired that Mr. Marshall turn over to him the deed from his mother to the Overton land and the deed from her to the Creek land. Mr. Marshall told him that he could not do this, but that he would get the deeds from her box and would go with Rolden to the Beadles home and talk with his mother. They went to the Beadles home on this same day and Mr. Marshall, in the presence of Rolden, handed her the two deeds and told her that she could do whatever she desired with them, and she handed them to Rolden and told him to take them and that this land would be enough to keep him. These three were the only persons present. Rolden never paid his mother anything for either of these two deeds. Mary A. Beadles did not consult or advise with Mr. Marshall in any way about the execution or delivery of these deeds or the conveyance of this land to Rolden. Rolden did not have access to his mother's safety-deposit box and he never asked the bank to let him open it.

### "ELEVENTH

"There was at all times a very close and confidential relationship between Rolden and his mother. He advised her on all business matters. She depended upon him for advice and depended upon him to look after her business for her. She did not consult with either of her two daughters, or her grandchildren, and did not talk with any of them about her business affairs.

#### "THIRTEENTH

"Rolden Beadles kept the two deeds from his mother to himself without filing them for record until June 25, 1937, which was four days after his mother died. He had never told his sister, Orabelle Overstreet, or any of his nephews or nieces, that he had deeds from his mother to the land in question, and the first they knew or heard anything about the deeds was an item in the newspaper stating that these and other deeds had been filed for record.

"About the 1st of October, 1937, Rolden was doing something in connection with the title to oil and gas rights in this real estate, and the oil companies raised the question of whether the two deeds from his mother to him were delivered before her death. Rolden went to an attorney to have him prepare affidavits to that effect to be sworn to by someone familiar with the facts. The attorney talked with Nina S. Jones [the notary] and from her learned that she would say that in her opinion the deed dated December 16, 1927, purporting to have been signed by Mary A. Beadles and covering the Overton land, and purporting to have been acknowledged by Mary A. Beadles before her as a notary public, was not in fact signed or acknowledged by Mary A. Beadles. The attorney communicated this information to Rolden, and under date of October 4, 1937, Rolden filed for record deeds conveying to his wife, Mattie A. Beadles, the land involved in this action, and other lands. Mattie A. Beadles gave no consideration for the conveyance to her of the land involved herein.

#### "FIFTEENTH

"The court is unable to find that the deed dated December 16, 1927, was either signed or acknowledged by Mary A. Beadles.

#### "SEVENTEENTH

"The court finds that both of the above-mentioned deeds were obtained by Rolden Beadles from his mother under such facts and circumstances as would raise a presumption that they were obtained by him by reason of undue influence upon his part exerted upon his mother; that he has failed to prove that the transactions resulting in the execution and delivery of said deeds were fairly conducted, and he has failed to prove that in the matter of the execution and delivery of said deeds his mother exercised her own free will and acted voluntarily by the exercise of her own judgment and reason. The court further finds that if his mother executed and acknowledged said deed of December 16, 1927, both of said deeds from Mary A. Beadles to Rolden Beadles were executed by and obtained from her by Rolden Beadles as a direct result of undue influence of said Rolden Beadles upon her."

On these findings the trial court set aside the challenged deeds and set aside the deeds executed by Rolden Beadles so far as they purported to convey to his wife the undivided half interest of his mother's estate therein. The court also adjudicated the respective proportionate interests of all the litigants in the lands in controversy.

The usual post-trial motions were filed and disposed of, and from

the judgment in favor of plaintiffs, defendant appeals, contending that the evidence was insufficient to establish plaintiffs' causes of action as against his demurrer, and that plaintiffs' evidence did not raise a presumption that a confidential relationship existed between defendant and his mother. He also contends that if such confidential relationship did exist his mother did have independent advice, and that it was pursuant thereto that she executed and delivered the deeds to defendant. Defendant also contends that there was an entire lack of evidence on which to base the judgment setting aside the deeds he made to his wife conveying the land in controversy.

This court holds that the evidence in the record which we have briefly summarized above was sufficient to withstand defendant's demurrer thereto. And in view of the testimony and the facts about which there was no dispute, as well as the evidence inherent in the circumstances, it seems idle to contend that a confidential relationship between Mrs. Mary A. Beadles and the defendant was not sufficiently established to place on the latter the burden of showing that the conveyances of the mother's interest in the Overton and Creek lands to him were made in good faith and for valuable considerations, under many familiar precedents. (*Paddock v. Pulsifer*, 43 Kan. 718, 23 Pac. 1049; *Hill v. Miller*, 50 Kan. 659, 32 Pac. 354; *Smith v. Smith*, 84 Kan. 242, 114 Pac. 245; *Coblentz v. Putifer*, 97 Kan. 679, 156 Pac. 700; *Hoff v. Hoff*, 106 Kan. 542, 550, 189 Pac. 613; *Flintjer v. Rehm*, 120 Kan. 13, 17, 241 Pac. 1087; *Madden v. Glathart*, 125 Kan. 466, 265 Pac. 42; *Grothaus v. Van Cleave*, 125 Kan. 560, 264 Pac. 1055.)

The record is completely void of evidence that Mrs. Mary A. Beadles had independent advice at the time the challenged deeds were dated. Touching the deed to the Overton land, she probably had nothing to do with its making. After that deed had remained in darkness for ten years, it was brought to light just long enough to be recorded, and then it was conveniently "lost" so that the grantor's signature could not be scrutinized. And in respect to the deed to the Creek land the testimony of the scrivener and of the notary contributed nothing from which it might be deduced that the grantor had the benefit of independent advice in the transaction which led to its execution or to dispense with its necessity.

While the statute requiring the need of independent advice in the making of a will where a fiduciary relationship exists between the

testatrix and the principal beneficiary (G. S. 1935, 22-214, now superseded by Laws 1939, ch. 180, § 41) does not extend to the making of deeds or gifts, yet equity applies the same principles under similar circumstances to test the bona fides of the latter transactions. (*Barger v. French,* 122 Kan. 607, 612, 253 Pac. 230; *Madden v. Glathart,* supra, 473-475, and syl. ¶ 3.)

See, also, "Anno.—Fraud—Confidential Relations—Advice," in 123 A. L. R. 1505 *et seq.*

Little need be said touching defendant's transfer of title to the Overton and Creek lands to his wife as soon as he learned that the notary who took the acknowledgment of the deed to the Overton land in 1927 still persisted in her belief that she had been deceived in that matter. Defendant's wife gave no consideration for those conveyances. The circumstances precluded any other conclusion than that the deeds were so made to hinder or frustrate the plaintiffs in the recovery of their several interests in the properties as heirs of Mary A. Beadles.

A patient consideration of the entire record reveals nothing which would permit the judgment to be disturbed.

Affirmed.