No. 43,880

BERNARR NELSON, Administrator of the Estate of Levina Beach, Deceased, *Appellee*, v. BERTHA MAE DAGUE, Appellant.

(398 P. 2d 268)

Opinion filed January 23, 1965.

*Ray H. Calihan, Jr.*, of Garden City, argued the cause and was on the briefs for the appellant.

*James W. Wallace*, of Scott City, argued the cause, and *D. B. Lang*, of Scott City, was with him on the briefs for the appellee.

The opinion of the court was delivered by

HATCHER, C.: This is an appeal from a judgment setting aside a deed to real estate which was alleged to have been procured by abuse of a confidential relationship.

The deed, dated and recorded September 8, 1959, was from Levina Beach, a widow, to her oldest daughter, Bertha Mae Dague. It conveyed 320 acres of farm land in Scott County, Kansas, of the approximate value of $32,000, subject to a mortgage of $6,500, and city real estate in Scott City, Kansas, of the approximate value of $10,000. There was no consideration for the deed.

The broad, general facts may be briefly stated.

Levina Beach died in Garden City Hospital on November 26, 1959, at the age of 73 years, leaving as her sole heirs at law three children whose names and approximate ages at the time were Bertha Mae Dague, age 45, Dale Beach, age 41 and Josephine Jones, age 29. Levina Beach and Joseph Beach, her husband, moved to Scott County, Kansas, in 1918, and shortly thereafter acquired the 320 acres of farm land. Joseph Beach died in 1945 having devised all his property to his widow, Levina Beach. In 1957, Levina Beach had a slight stroke which confined her to bed for several days and

thereafter she was unable to hold things with assurance and her right leg was noticeably affected.

On February 2, 1959, Levina Beach was taken by Bertha Dague to the Scott County Hospital. Her illness was diagnosed as arteriosclerosis and chronic nephritis. She was released on February 28, 1959, and was then taken by Bertha Dague to the Tulsa Clinic where she was treated until April 1, 1959. She was then admitted to the St. Catherine Hospital in Garden City and was treated until May 5, 1959, at which time she was discharged. On August 1, August 29, and September 23, she was admitted for blood transfusions. Her last admission was on October 7, 1959, where she stayed until her death on November 26, 1959. Upon her first admission to the St. Catherine Hospital her diagnosis was chronic glomerular nephritis with uremia with associated diagnosis of hypertension and arteriosclerosis generalized.

At practically all times that Levina Beach was in the Scott County Hospital, the Tulsa Clinic and the St. Catherine Hospital, Bertha Dague was with her. During the periods Levina Beach was not in the clinic or hospitals she lived with and was cared for by Bertha Dague. The other two children and their spouses visited their mother on numerous occasions at the Scott County Hospital and at St. Catherine Hospital and offered to care for their mother but complained that they were prevented and discouraged from doing so by Bertha Dague.

Following the death of Levina Beach an administrator was appointed for her estate and this action was brought against Bertha Dague to set aside the deed in question. The defendant has appealed from the judgment of the district court setting aside the deed.

The appellant presents only an issue of fact. She contends that there was no substantial evidence to support the trial court's finding (1) that the deed was procured by undue influence and (2) that a confidential and fiduciary relationship existed between Levina Beach and the appellant.

Before considering the specific facts in detail it may be helpful to consider the law applicable to confidential and fiduciary relationships and the validity of transactions in connection therewith.

It must be conceded, as appellant contends, that the mere relationship of parent and child does not raise a presumption of a confidential and fiduciary relationship. The fact that a gift of real estate is made by deed from a parent to a child in and of itself raises no

presumption of over-reaching which would invalidate the deed. (*Winkler v. Korzuszkiewicz* (*Shusky*), 112 Kan. 283, 211 Pac. 124.)

Whether or not a fiduciary relationship exists and whether or not it has been abused does, to a great extent, depend on the particular facts and circumstances of each individual case. This court has refused, for that reason, to give exact definitions or fix definite boundaries for that class of human relations commonly known as fiduciary which, based on principles of common honesty, require fair dealing between parties.

In the case of *Lindholm v. Nelson,* 125 Kan. 223, 264 Pac. 50, this court held:

"A fiduciary relation does not depend upon some technical relation created by, or defined in, law. . It may exist under a variety of circumstances, and does exist in cases where there has been a special confidence reposed in one who, in equity and good conscience, is bound to act in good faith and with due regard to the interests of the one reposing the confidence." (Syl. 3.)

We have no hesitancy in concluding that the facts in this case were sufficient to establish the existence of a confidential and fiduciary relationship. There was evidence to the effect that the defendant was a domineering woman and did completely dominate her mother, Levina Beach. That following her stroke, Levina Beach was lucid at times and at other times did not understand and could not communicate. During her last illness the appellant either supervised, assisted or took care of all her business matters. On June 6, 1959, Levina Beach signed and gave to Bertha Dague a general power of attorney. The trial court summarized the testimony as follows:

"Several witnesses on the other side testified that Levina Beach complained of bugs on her arms and in her hair and flies on the ceiling when there were none. That she could not talk in coherent sentences, could only mumble and made such comments as 'don't leave,' 'papers,' 'don't let them,' 'want me to sign,' 'make me sign;' that Dale Beach and Josephine Jones and their spouses did many things for Levina Beach such as assisting in building house, repair work and moving; that they were prevented from doing more by Bertha Dague, such as Bertha's taking her away from church circle where she went with Josie when she did not want to leave. Dale Beach and wife testified that in July, 1959, Bertha Dague said that mother would not be in this condition if Josie had not been born, that she, Bertha, needed a level head to help her and the property should be divided between her, Bertha and Dale; that Josephine Jones had the keys to her mother's house and went there to water the flowers and found that Bertha Dague had changed the lock; that after the entry of Levina Beach to the hospital never again did Josephine or Dale see their mother again when Bertha was not present except in the hospital."

This court has held under similar facts that a confidential relationship existed. (*Fairbank v. Fairbank*, 92 Kan. 45, 139 Pac. 1011; see, also, additional cases subsequently cited.)

This court has under familiar precedents held that when a confidential relationship between members of the family involved has been established the grantee has the burden of showing that the conveyance was made in good faith and for a valuable consideration. This court reaffirmed the above rule in *Henks v. Panning*, 175 Kan. 424, 264 P. 2d 483, and stated on page 429 of the opinion:

"As early as *Paddock v. Pulsifer*, 43 Kan. 718, 23 Pac. 1049, we said:

" 'In such a case as this, the burden of establishing the perfect fairness and equity of the conveyance to Mrs. Paddock was thrown upon her, in view of her father's age, sickness and feebleness of mind, and the close relation of the parties. Confidence was necessarily reposed in Mrs. Paddock. If that confidence was abused in procuring the deed, the trial court very justly set it aside. The deed purports upon its face to have been executed for $2,500, "cash in hand paid." This is much less than the value of the land. It is admitted by Mrs. Paddock that she paid nothing for the deed; and if she obtained it from her father upon the promise to pay $2,500 in money or in notes, without intending to pay for the same, or if she did not have the means of paying what she agreed to pay, this would be indicative of actual fraud upon her part. She claims, however, that her father gave her the land, and intended to give her the land without any consideration being paid. If this were true, Mrs. Paddock should have clearly established the perfect good faith of the transaction.' (pp. 721, 722.)

"In *Coblentz v. Putifer*, 97 Kan. 679, 156 Pac. 700, we held:

" 'Rule followed that persons enjoying a confidential relationship with the grantor of gifts *inter vivos* have the burden of showing that such gifts were made without undue influence.' (Syl. ¶ 1.)

"Later in *Hoff v. Hoff*, 106 Kan. 542, 189 Pac. 613, the following statement appears:

" '. . . Viewed as gifts *inter vivos*, the burden was on Peter, owing to his confidential relationship, to show that he did not obtain them through undue influence, and he failed to sustain that burden. (*Smith v. Smith*, 84 Kan. 242, 114 Pac. 245; *Coblentz v. Putifer*, 97 Kan. 679, 156 Pac. 700.)' (p. 550.)

"Still later in *Staab v. Staab*, 160 Kan. 417, 163 P. 2d 418, we said:

" 'Under familiar precedents, when a confidential relationship between certain members of the family involved has been established, the burden is cast on a grantee to show the conveyance was made in good faith and for a valuable consideration. . . .' (pp. 422, 423.)

"For other decisions of similar import wherein the principle announced in the foregoing cases is recognized and applied see *Madden v. Glathart*, 125 Kan. 466, 265 Pac. 42; *Grothaus v. Van Cleave*, 125 Kan. 560, 264 Pac. 1055; *Overstreet v. Beadles*, 151 Kan. 842, 101 P. 2d 874."

Under the facts as disclosed by the record the trial court was justified in concluding that the defendant failed to sustain the

burden placed upon her of showing that she did not obtain the deed through undue influence exerted while in a confidential relationship with Levina Beach. The appellant stresses the fact that Levina Beach had the advice of an attorney in making the deed in question. The appellant did take Levina Beach to an attorney to have the deed drawn. However, the testimony does not disclose that the attorney gave Levina Beach any independent advice other than the legal effect of a deed as compared to a will.

The trial court found:

"That at many times during her eleven month illness she was incompetent to legally convey her property;

Levina Beach, for a period of time, after a blood transfusion, probably was legally competent to understand the consequences of her acts. The deed in question was executed ten days after she received a blood transfusion and fifteen days before she received another transfusion.

"Although Levina Beach was enfeebled suffering from progressive arteriosclerosis, uremia due to chronic nephritis, and nutritional anemia, on September 8, 1959, she was probably legally competent to understand the nature and consequences of her acts on said date, but *had a low resistance to the constant influence, perhaps amounting to persuasion exercised by Bertha Dague.*

"The court finds that the deed dated September 8, 1959, from Levina Beach to Bertha Dague is set aside for the reason such deed was procured by undue influence exercised toward Levina Beach while she was in a weakened physical and mental condition." (Emphasis supplied.)

There was considerable evidence although somewhat conflicting in many respects.

It is the responsibility of the trial court, not this court on appeal, to weigh the evidence and settle the facts based on conflicting testimony. In *Hendrixon v. Schemahorn,* 193 Kan. 640, 396 P. 2d 352, we stated at page 643 of the opinion:

"It is equally well settled that in considering evidence on appellate review, a verdict or finding made by the trier of the facts and supported by evidence will not be disturbed on appeal and that findings of fact necessarily embraced in the general judgment rendered by the district court will not be disturbed if there is some, though controverted, evidence to sustain it. (*Dryden v. Rogers,* supra, pp. 154, 157; *Curry v. Stewart,* 189 Kan. 153, 155, 368 P. 2d 297; *Nichols Co. v. Meredith,* 192 Kan. 648, 652, 391 P. 2d 136.)"

We conclude that there was substantial evidence to support the findings of the trial court.

The judgment is affirmed.

APPROVED BY THE COURT.