No. 44,002

RONALD J. WILKINSON, Special Administrator of the Estate of R. J. Cummings, Deceased; MARGARET CUMMINGS, a Minor, by BESSIE GILLESPIE, her Mother and Next Friend; and NORMA JEAN ROWE, *Appellants*, v. CRAYTON CUMMINGS and VIOLA CUMMINGS, *Appellees*.

(400 P. 2d 729)

Opinion filed April 10, 1965.

*C. Robert Bell*, of Wichita, argued the cause, and *Lester L. Morris, Verne M. Laing, Ferd E. Evans, Jr., Ralph R. Brock* and *Joseph W. Kennedy*, all of Wichita, were with him on the briefs for the appellants.

*Paul W. Schmidt*, of Wichita, argued the cause, and *Charles E. Cotton*, also of Wichita, was with him on the briefs for the appellees.

The opinion of the court was delivered by

FONTRON, J.: This is an appeal by the plaintiffs from a judgment refusing to set aside eight deeds from R. J. Cummings, as grantor, to his son, Crayton Cummings, and Crayton's wife, Viola, as grantees. The action was commenced against the two grantees by the

administrator of R. J. Cummings' estate and by Mr. Cummings' two granddaughters. For convenience, the appellants will be designated as plaintiffs, and the appellees, as defendants.

As gleaned from the record, the factual background may briefly be summarized. R. J. Cummings was a long-time resident and merchant of Wichita. During his active business career he acquired the Sedgwick county farm and the seven Wichita properties which are involved in this lawsuit. Mr. Cummings, whose wife died in 1949, had three children: Margaret, who died in 1932; Paul, now deceased, whose two daughters are plaintiffs in this lawsuit; and Crayton who, with his wife, is one of the defendants.

In the fall of 1956, R. J. Cummings went to live with Crayton and Viola Cummings, and continued to make his home with them until his death on March 17, 1963. During this period of time the deeds in question were executed and delivered to the defendants, the first on September 25, 1959, and the last two on May 7, 1962. All deeds were properly acknowledged and were recorded shortly after their execution.

Against this backdrop, the plaintiffs predicate their action on two grounds: First, that R. J. Cummings, the decedent, lacked mental capacity to execute the deeds, and second, that the deeds were procured by undue influence on the part of the grantees. The second ground is formulated on the thesis that a confidential relationship existed between grantor and grantees, and that the grantor received no independent advice before executing and delivering the deeds to the grantees.

Before proceeding to a discussion of the points raised by the plaintiffs, we should clarify, or define, our appellate function under the circumstances of this case. The trial court, in rendering judgment for the defendants, made the following findings:

"(a) That R. J. Cummings, at all times involved in this action, was mentally competent and of sound mind;

"(b) That at all times involved herein, no confidential relationship existed between R. J. Cummings and the defendants;

"(c) That R. J. Cummings received independent advice with respect to the transactions involved herein, and

"(d) The court finds generally in favor of the defendants and against the plaintiffs."

It is contended by the plaintiffs that the trial court erred in so finding and, thus, under well entrenched rules of appellate review, we are restricted in our consideration of this appeal to this single,

yet comprehensive, question: Are the findings of the trial court supported by substantial competent evidence? No better, or more succinct, statement of the rule has come to this writer's attention than that set forth in the second syllabus of *In re Estate of Guest,* 182 Kan. 760, 761, 324 P. 2d 184, where it is held:

"Where findings of fact are attacked for insufficiency of evidence or as being contrary to the evidence, this court's power begins and ends with a determination whether there is any competent substantial evidence to support them, and where findings are so supported they are accepted as true and will not be disturbed on appeal."

Relating the rule to this case, we are now called upon to decide, specifically, whether the evidence is legally sufficient to sustain the findings of the trial court which we have previously quoted.

As to finding (*a*), *i. e.,* that R. J. Cummings, at all times involved herein, was mentally competent and sound of mind, the record is replete with evidence attesting to his normalcy. Not only did friends and associates of Mr. Cummings testify, on defense, that he was normal and knew his own mind, but plaintiffs' own witness, Dr. Carl R. Burkhead, who long had been Mr. Cummings' personal physician and, in such capacity, had excellent opportunity to observe him, testified that this patient knew what he had and what he wanted to do with it and was competent to execute the deeds.

Although Dr. Burkhead is not shown to have specialized in psychiatry, his opinion, backed by long years of general practice in diagnosis and internal medicine, was entitled to respect, credence and weight. Moreover, the testimony of the several lay witnesses who appeared on behalf of the defendants was germane to the issue. (*Kelley v. Kelley,* 158 Kan. 719, 729, 150 P. 2d 347.) The record contains abundant evidence to sustain the trial court's finding of mental competency.

Findings (*b*) and (*c*) made by the trial court pertain to the issue of undue influence. The plaintiffs have contended throughout this lawsuit that the defendants enjoyed a confidential relationship with Mr. Cummings and that the deeds were executed by him without the benefit of independent advice.

This court has long adhered to the rule that where a confidential relationship has been shown to exist between the parties to a deed, the grantee has the burden of showing that the conveyance was made in good faith and without any undue influence on his part. In *Nelson, Administrator v. Dague,* 194 Kan. 195, 398 P. 2d 268, we reviewed several of our prior decisions, and said:

"This court has under familiar precedents held that when a confidential relationship between members of the family involved has been established the grantee has the burden of showing that the conveyance was made in good faith and for a valuable consideration. . . ." (p. 198.)

In the earlier case of *Madden v. Glathart*, 125 Kan. 466, 265 Pac. 42, we held:

"The presumption of undue influence in this case, on account of the fiduciary relationship of father and son and the entire failure to afford and show independent advice, justifies the court in holding the attempted conveyance to be invalid." (Syl. 3.)

Without intending in the least to detract from the well established principles enunciated in the foregoing and other like cases, we must point out that it is first essential to their application that there be a confidential relationship. Whether such a relationship is shown to exist is an evidentiary question. It is a question which must be determined in each case by the trier of the facts. In *Nelson, Administrator v. Dague*, supra, this court has said:

"Whether or not a fiduciary relationship exists and whether or not it has been abused does, to a great extent, depend on the particular facts and circumstances of each individual case. This court has refused, for that reason, to give exact definitions or fix definite boundaries for that class of human relations commonly known as fiduciary which, based on principles of common honesty, require fair dealing between parties." (p. 197.)

We believe the trial court, in this instance, was justified in finding that no fiduciary relationship existed between R. J. Cummings and the defendants. Without going into detail, there was testimony that Mr. Cummings was of an independent personality and made his own decisions; that he generally had the last word in a deal; that he was entirely normal and not subject to anyone's domination; that he made the decisions as to his properties and his O. K. had to be obtained for work done thereon; that both he and Crayton directed workmen; and that both were together part of the time when rents were collected. This evidence, without more, would avail to sustain the trial court in its conclusion that no confidential relationship was established.

Since we now hold the court below was justified in finding that no fiduciary relationship existed, the question of whether the decedent received independent advice has little significance. We have, nonetheless, examined the record in such regard. Various witnesses testified Mr. Cummings did discuss his properties with friends, and had stated that he and his wife had decided that the farm was Crayton's; that he couldn't sell the farm because Cray-

ton owned it; that Crayton and Viola would get the farm; that some of the town properties belonged to Crayton and eventually all would go to him and his wife. We believe there is substantial evidence that the elder Cummings did receive independent advice. (*Stunkel v. Stahlhut*, 128 Kan. 383, 277 Pac. 1023; *Stanley v. Stanley*, 131 Kan. 71, 75, 289 Pac. 406.)

The law does not condemn gifts *inter vivos,* as such. There is nothing intrinsically wrong in gifts between parent and child where they are induced by feelings of love, affection, kindness or gratitude. The relationship, in and of itself, raises no presumption of overreaching (*Winkler v. Korzuszkiewicz (Shusky)*, 112 Kan. 283, 211 Pac. 124; *Nelson, Administrator v. Dague, supra.*) It is only where a confidential relationship exists that the law burdens a grantee with establishing the *bona fides* of the transaction and employs its protecting arm to see that no unfair advantage has been taken of the donor. (*Jernberg v. Evangelical Lutheran Home for the Aged,* 156 Kan. 167, 131 P. 2d 691.)

We are constrained to hold, from a painstaking review of the entire record, that finding (*d*), wherein the trial court found in favor of the defendants and against the plaintiffs generally, is supported by substantial competent evidence and cannot be disturbed.

The judgment is affirmed.