No. 45,520

Tommy C. Atkins, *Appellant*, v. Robert P. Bayer, *Appellee*.

(464 P. 2d 233)

Opinion filed January 24, 1970.

*James S. Phillips*, of Wichita, argued the cause, and *Fred Hall*, of Wichita, was with him on the brief for the appellant.

*Vernon D. Just*, of Wichita, argued the cause, and *Ralph Foster*, and *William A. Wells*, both of Wichita, were with him on the brief for the appellee.

The opinion of the court was delivered by

Harman, C.: In this damage action arising from a rear-end automobile collision plantiff Tommy C. Atkins appeals from a judgment rendered against him upon an adverse jury verdict.

Plaintiff, defendant Robert P. Bayer, defendant's wife who was his passenger, and an investigating police officer were witnesses at the trial on the liability aspect of the case. Their testimony,

viewed as it must be in the light most favorable to the prevailing party in the trial court, revealed the following: West Kellogg street on U. S. Highway 54 in Wichita is a four-lane divided highway with a speed limit of fifty miles per hour. There is an overpass bridge or viaduct where Kellogg goes over Seneca street. Near this viaduct the highway has connecting ramps and additional lanes for both entering and exiting traffic using Seneca street.

On July 6, 1966, at approximately 10:05 p. m. the plaintiff was driving a 1960 Corvair automobile west on Kellogg in the right hand lane at a speed of about forty-five miles per hour. There was moderately heavy traffic on the road. As plaintiff approached the east end of the viaduct he noticed a sign directing both northbound and southbound traffic exiting on Seneca street and an overhead sign stating "Rough Road Ahead." He proceeded west and just beyond the first exit he saw a yellow blinking caution light. About half way between the exit and the entrance ramps he deaccelerated his automobile. He noticed flare pots, then a tree of flags which would block traffic coming up a ramp. Then he saw a barricade. Using his rear-view mirror he noticed cars behind him in both lanes of traffic. He "hit" his brakes and came to a sudden stop ten to twenty feet east of the barricade. He did not pump the brake pedal. East of this barricade another barricade was lying on its side. Evidently there had been some repair work in the area but the record does not reveal where or what kind. Some of the lights and flags referred to in the testimony were north of the road upon which plaintiff and defendant were traveling.

Defendant was driving a small 1965 Chevrolet van about forty-five miles per hour in a westerly direction behind plaintiff's vehicle. He became aware of plaintiff's vehicle when he saw its brake lights come on, at which time defendant was about 125 to 150 feet behind plaintiff's vehicle. Before this he had seen nothing to indicate any hazard. He saw traffic in the lane to his left and applied his brakes, making skidmarks fifty-six feet in length prior to hitting the rear end of plaintiff's auto.

Defendant testified that immediately after the collision plaintiff stated "he was not aware of any trouble being there until he saw the shadow of this barricade, which he stopped in front of, either in the headlights of his car or the shadow of it from the overhead street lights." Plaintiff testified he had no room to go around the barricade; the investigating police officer testified plaintiff would

have had space to go around the barricade and proceed on west to the next barricade. Some of the flare pots along the highway were not lighted.

We have difficulty in determining from the record on appeal the exact physical situation. Plaintiff's witnesses used a diagram of the highway in testifying, indicating, without verbal clarification, various positions and locations upon it. This diagram is not reproduced in the record and in some instances the testimony with reference to lights, warning signs, curbs, ramps, and exit and entrance lanes loses much of its meaning and leaves these matters open to conjecture.

We should consider, first, plaintiff's contention the trial court erred in excluding opinion testimony of an expert witness offered by him. The investigating police officer, after being qualified as an expert witness in traffic accident investigation, was asked a long hypothetical question which purportedly called for his opinion as to whether a person in defendant's position would have seen plaintiff's automobile in time to stop and avoid the collision. Defendant objected to the form of the question. The trial court sustained the objection, apparently on the basis any answer given would invade the province of the jury in determining the issue of negligence.

Our law on expert and other opinion testimony is now codified (K. S. A. Chap. 60, Art. 4, ¶ G.). The part pertinent here provides:

"(d) Testimony in the form of opinions or inferences otherwise admissible under this article is not objectionable because it embraces the ultimate issue or issues to be decided by the trier of the fact." (K. S. A. 60-456 [d].)

The question objected to here was put to the witness on the basis he had only to assume the truth of the facts therein stated. It did not require him to pass upon the weight or credibility of disputed evidence and thus in effect usurp the province of the jury. The facts hypothesized fairly well embodied plaintiff's theory of the case. As such, although a trial court is vested with a wide discretion in receiving opinion evidence (*Osborn v. Lesser,* 201 Kan. 45, 439 P. 2d 395), we think the evidence could well have been received (see 2 Jones on Evidence, 5th ed., §§ 417-418). However, the fact that it was not does not require reversal. One seeking reversal of a judgment because of exclusion of evidence has the burden of demonstrating prejudice as well as error in the ruling complained of. We think any error in the exclusion was rendered

harmless because of other testimony given by the expert witness. The hypothetical question put to the witness necessarily called for his special knowledge as to the distance within which under given conditions a vehicle can be stopped by braking action after the driver has, or should have, become aware of danger. This aspect was within the proper sphere of expert testimony since laymen are not wholly familiar with the reaction time and braking distance normally involved, but that was the only aspect of the question which did call for expertise on the part of the witness. The distance within which defendant here could have stopped his vehicle was one crucial element in the case and plaintiff could well have been prejudiced in its omission. However, later on in his testimony the expert did testify as to reaction time and braking distances at various speeds, giving a formula, and without objection stated his opinion that an average vehicle traveling at forty-five miles per hour would take from 145 to 150 feet to stop. Thus the jury was apprised of the essential information the expert possessed on the issue in question so that it could as well draw any conclusion to be derived therefrom. We cannot say plaintiff suffered prejudice in the ruling complained of.

Plaintiff's other contentions upon appeal may be considered together. They are that the trial court erred in denying his motions for judgment and for directed verdict upon the issue of liability, there was no substantial evidence to support the jury verdict and the jury verdict was contrary to and in disregard of the evidence. Generally his argument is the evidence showed defendant was negligent as a matter of law in being unable to stop his vehicle within the range of his vision at night and further showed as a matter of law that plaintiff was not guilty of contributory negligence.

The court did submit to the jury under the ordinary instructions the issues of negligence, contributory negligence and proximate cause. The instructions defined those terms and included correct statements of our law on the general duties of motorists with respect to lookout, following too closely, signaling in the event of stopping or suddenly decreasing speed, control of vehicle and speed. As indicated, the jury returned a general verdict for defendant.

Plaintiff's contentions with respect to the evidence all depend upon whether or not the issues as to liability were properly submitted to the jury.

We need not further detail the evidence. It was contradictory

in several respects, not all of which we have related inasmuch as the jury's verdict has now resolved any conflict in defendant's favor for the purpose of appellate review. Without attempting any extended analysis of the evidence, we are of opinion it was such as to require submission of the issues of defendant's negligence and plaintiff's contributory negligence to the jury. It is only when different minds can reasonably arrive at but one result that fact issues become questions of law justifying a court in substituting its judgment for that of the jury.

On the issue of defendant's negligence as a proximate cause of the collision the record is very indefinite as to the position of signs or lights which should have given him notice of danger on the portion of the highway he was traveling, which was a through highway. There was evidence that immediately after the collision plaintiff stated that he himself was not aware of any danger until he saw the shadow of the barricade in his own headlights or from overhead street lights. How much less then was defendant's opportunity to be aware of danger? What about his failure to stop sooner after seeing plaintiff's brake lights come on? Prior to this, defendant had no indication of any hazard on his thoroughfare. Plaintiff had decreased the speed of his vehicle and then had suddenly stopped, all without previous signal. Defendant's conduct is to be measured by that of the reasonably careful person under the same or similar circumstances. We think that minds of reasonable men could reach different conclusions in this assessment.

Plaintiff would invoke the range of vision rule first broadly stated by this court in *Fisher v. O'Brien*, 99 Kan. 621, 162 Pac. 317, that it is negligence as a matter of law to drive an automobile at night at such speed that it cannot be stopped within the distance that objects can be seen ahead of it. The rule is not wholly inflexible. Many examples could be cited but one will suffice. The case of *Hill v. Hill*, 168 Kan. 639, 215 P. 2d 159, involved a rear-end collision in which it was contended the driver of the following vehicle was guilty of negligence as a matter of law. This court in rejecting that contention stated:

"Appellant attempts to invoke the rule that a driver of a motor vehicle must so operate his vehicle that he can safely stop within the distance that he can clearly see any other vehicular traffic in the roadway ahead of him. That is a well established rule, but it does not apply to a situation where

a sudden emergency arises, as by the sudden application of brakes and sudden stop without warning of another vehicle just ahead." (p. 641.)

On the issue of contributory negligence we think it was also jury work to determine whether plaintiff's conduct contributed to his predicament. Plaintiff's testimony he had no room to go around the barricade safely was contradicted by the testimony of the investigating officer that he could have done so. Plaintiff was aware of the traffic on the through highway and the appropriateness of any evasive action open to him to avoid collision properly became a jury question.

The case is analogous to the situation presented in *Johnston, Administratrix v. Ecord,* 196 Kan. 521, 412 P. 2d 990. In fact we are told the collision in *Johnston* occurred on the same highway at the same viaduct as the collision here. There the plaintiff's decedent was apparently confronted with a dog crossing the highway and he suddenly stopped or decreased his speed to avoid hitting the dog with the result he was struck in the rear by the defendant's vehicle. The trial court directed a verdict for plaintiff on the question of liability. Upon appeal this court reversed, holding that all issues as to liability should have been submitted to the jury. On the issue of contributory negligence on the part of plaintiff's decedent we stated:

". . . we think it was jury work to determine whether there was any violation by decedent of the duty imposed by K. S. A. 8-547 (*c*) which provides:

" 'No person shall stop or suddenly decrease the speed of a vehicle without first giving an appropriate signal in the manner provided herein to the driver of any vehicle immediately to the rear when there is opportunity to give such signal.' " (pp. 529-530.)

We discussed the use of mechanical brake signals as authorized by law and held:

"K. S. A. 8-547 (*c*) construed and held to require the giving of an appropriate signal upon stopping or suddenly decreasing the speed of a vehicle, and held further, what constitutes an appropriate signal depends on the necessity for, and the driver's opportunity to give, an effective warning commensurate with the probable hazards revealed under the circumstances of the particular case." (Syl. ¶ 4.)

We further held it was a jury question to determine whether an *appropriate* signal was given under the circumstances.

The trial court properly submitted the issues as to liability to the jury. There was substantial competent evidence in support of the jury verdict and the judgment based thereon must be and is affirmed.

APPROVED BY THE COURT.