No. 48,884

Opal N. Curtis and Noble E. Freden, *Appellants,* v. Dean S. Freden and Marion J. Freden, *Appellees.*

(585 P.2d 993)

Opinion filed October 28, 1978.

*R. Edgar Johnson,* of Johnson, Bengtson, Waters & Thompson, Chartered, of Junction City, argued the cause and *Roger D. Thompson,* of the same firm, was with him on the brief for appellants.

*Charles A. Chartier,* of Junction City, argued the cause and was on the brief for appellees.

The opinion of the court was delivered by

Holmes, J.: This was an action to set aside a deed from a widowed mother (Blanche Freden) to the defendants Dean S. Freden, her son, and Marion J. Freden, his wife, as joint tenants. The plaintiffs, Opal N. Curtis and Noble E. Freden, were also children of Blanche Freden and, together with Dean, constituted all of her heirs at law. The deed was executed by Blanche on April 30, 1971, and conveyed 80 acres of farm land in Oklahoma. Blanche died May 11, 1971, at the age of eighty, and the Oklahoma farm property constituted the bulk, if not all, of her estate. Blanche was a native of Oklahoma but moved to Wichita where she raised her family of three children. Opal married and moved to Missouri and Noble married and settled in Colorado. Dean and his wife, Marion, continued to live in Wichita close to Blanche until 1963 when Dean took a job in Junction City. Shortly after Dean moved to Junction City, Blanche was swindled by a con artist in Wichita and lost most of her life's savings. In 1965, Dean and Marion prevailed upon Blanche to move to Junction City where she lived alone in an apartment until her death. Dean and

Marion, being in the same city, saw Blanche regularly and did many things to assist her in her day-to-day living and in the handling of her farm property in Oklahoma. They provided her with transportation when she wanted to go to the doctor, shopping or other places. They assisted her in getting her income tax information together and in taking her to her accountants and attorney and did many things that one would expect a devoted child to do for an elderly parent. Opal and Noble, not living in close proximity to Junction City, visited their mother on occasion but not often.

Upon Blanche's arrival in Junction City she established a checking and savings account with Dean's name on both accounts. She also obtained a safe deposit box in the names of Blanche, Dean and Marion. The accounts and safe deposit box were not utilized by Dean or Marion during the lifetime of Blanche. In 1966, Blanche consulted Robert K. Weary, an attorney in Junction City, for the preparation of a will. Dean was named as executor and trustee in the will, which provided for an ultimate distribution equally to Dean, Opal and Noble. Mr. Weary continued to act as Blanche's attorney until her death although he never represented Dean or Marion.

On April 22, 1971, Blanche became seriously ill and was taken to the hospital by ambulance. Dean arranged for her admittance and she was placed under the care of Dr. M. L. Wisby, D.O., who was Blanche's regular doctor, and Dr. Maurice F. Priddy, D.O., a partner of Dr. Wisby. Blanche was suffering from cancer and remained in the hospital until her death on May 11, 1971. On April 30, 1971, Mr. Weary prepared a power of attorney naming Dean as attorney-in-fact for Blanche and a warranty deed conveying the Oklahoma farm land from Blanche to Dean and Marion. These instruments were picked up at Weary's office by Dean and executed the same day by Blanche in the presence of Donald E. Hamilton, a notary public and employee of Central National Bank in Junction City. At the time of her death, Blanche's 1966 will remained in her safe deposit box and was not removed by Dean until approximately one and one-half years after her death.

Plaintiffs contend that their mother was incompetent or incapacitated to the point that she could not legally execute the deed in question. In the alternative they contend the deed was exe-

cuted as a result of undue influence exerted upon their mother by Dean and Marion. Plaintiffs also contend that Dean occupied a confidential relationship with his mother, that the deed was executed at a time when she was aged, weak and infirm, that under such circumstances there is a presumption of undue influence and Dean had the burden of proof to overcome such presumption and also had the burden to show Blanche had the benefit of independent advice. Finally, plaintiffs assert that as Dean had access to Blanche's original will and did not offer it for probate, he should be barred from any interest in the estate under the provisions of K.S.A. 59-617, *et seq.*

The case was tried to the court which found in favor of the defendants on all issues. Plaintiffs have appealed, asserting several points as error.

This appeal was taken under our rules in existence prior to January 10, 1977. At the outset we feel constrained to comment that the briefs furnished to the court, by both parties, do not conform to the requirements of old rule 8(*b*), subsections 2 and 4, 214 Kan. xxvi, in that the briefs are not keyed to the printed record, making it extremely difficult and time-consuming when reference to the record is required. In addition, the printed record was not keyed to the transcript. In view of the condition of the briefs and record, it was deemed necessary for the court to obtain the transcript of all proceedings and make an independent examination thereof.

We will consider plaintiffs' points on appeal in the order in which they were presented.

"1.  It was error to deny the medical doctors treating Blanche Freden the right to express their opinions concerning her capacity and competency to execute a deed to real estate while under the doctors' care."

During trial the court heard testimony from Blanche's doctors concerning her physical and mental well-being during the period of her last illness. Dr. M. L. Wisby, D.O., had treated Blanche for several years prior to her death and during her stay in the hospital from April 22, 1971 to April 25, 1971, when he left on vacation. He returned May 7, 1971, and treated her until her death on May 11, 1971. During the time from April 25th to May 7, 1971, his partner, Dr. Maurice F. Priddy, D.O., treated Blanche. Although the trial judge permitted Dr. Wisby to present evidence of Blanche's general condition and state of mind, he refused, on

direct examination, to allow him to state his ultimate conclusion as to his opinion of Blanche's mental competency on April 30, 1971, the date the deed was signed. On cross-examination, however, the following took place:

"Q. You did not see her until that time on the 23rd, until the 7th of May?
"A. I did not.
"Q. So you do not know her condition, mental state on April the 30th, 1971?
"A. No."

Dr. Wisby was examined at length and his testimony covers forty-two pages of the transcript. The court allowed a wide latitude in the questioning of the doctor and much of his testimony was based upon the nurses' notes and other hospital records. All of the hospital records were admitted in evidence, without objection, and were available to both doctors during their testimony.

Dr. Priddy, the attending doctor from April 25, 1971, to May 7, 1971, also testified. Again the trial court allowed wide latitude in the scope of the examination. The testimony covers thirteen pages of the transcript and Dr. Priddy indicated that, as his treatment of Blanche occurred some four years before, his memory was somewhat hazy. He also testified that he made no notations or any records concerning Blanche's mental condition during the time she was under his care. He was not allowed to testify as to his ultimate conclusion of Blanche's competency on April 30, 1971.

K.S.A. 60-456(*d*) provides:

"Testimony in the form of opinions or inferences otherwise admissible under this article is not objectionable because it embraces the ultimate issue or issues to be decided by the trier of the fact."

As a general rule, the qualifications of an expert witness and the admissibility of his testimony are matters for the determination by the trial court in the exercise of its discretion. *Newton v. Hornblower, Inc.,* 224 Kan. 506, 522, 582 P.2d 1136 (1978); *Plains Transp. of Kan., Inc. v. King,* 224 Kan. 17, 21, 578 P.2d 1095 (1978); *State v. Brooks,* 217 Kan. 485, 487, 536 P.2d 1365 (1975); *Ziegler v. Crofoot,* 213 Kan. 480, 516 P.2d 954 (1973).

While the excluded testimony might very well have been admitted by the trial court, we cannot say it was an abuse of discretion to refuse the opinion testimony of Drs. Wisby and Priddy.

In *Atkins v. Bayer,* 204 Kan. 509, 464 P.2d 233 (1970), in

considering the failure to admit opinion evidence, this court stated at page 511-512:

"However, the fact that it was not does not require reversal. One seeking reversal of a judgment because of exclusion of evidence has the burden of demonstrating prejudice as well as error in the ruling complained of. We think any error in the exclusion was rendered harmless because of other testimony given by the expert witness."

While *Atkins* involved the opinion of a police officer in an automobile collision case, the principle enunciated applies equally in the instant case. Assuming the exclusion of the opinion testimony could be considered error, both doctors testified at length as to their observations concerning Blanche's physical and mental condition and any such error would have been rendered harmless. We find no merit in appellants' first point.

"2. In the event the court found that Blanche Freden was competent to execute a deed to real estate on April 30, 1971, then the court committed error by not requiring the grantee to establish by clear and convincing evidence that the conveyance was the will, desire and freely formed intention of the grantor and that the grantor clearly understood what she was doing at the time the deed was executed.

"3. The court erred in failing to find that a confidential relationship existed between grantor and grantee and that the conveyance occurred while grantor was weak and infirm requiring application of the independent advice rule."

We will consider appellants' second and third points together. In these points appellants challenge the validity of five of the trial court's findings of fact and conclusions of law, to-wit:

"1. On the 30th day of April, 1971, the grantor, Blanche Freden, was competent at the time of the execution of the Deed and understood its nature and that the Oklahoma farmland was conveyed to Dean and Marion Freden was fair in light of the desires of Blanche Freden in excess of ten (10) years.

"2. That the relationship between Dean Freden and his mother, Blanche Freden, was a warm and close relationship but no confidential fiduciary relationship existed between Dean and his mother at the time of the execution of the Deed.

"3. That it was the desire of Blanche Freden to convey the property to Dean Freden from her estate prior to her move to Junction City, Kansas.

. . . . .

"5. That the express desire of Blanche Freden prior to her death was to transfer the farm to Dean Freden. She had helped the other children prior to her death, and had expressed such intent to Earl and Ida Hane.

"6. The conveyance of property dated April 30, 1971, should not be set aside and was not an overreaching, unfair, or breach of a confidential fiduciary relationship on the part of Dean Freden, nor was the Deed to him in trust for the Plaintiff."

Appellants first question the findings of the trial court that no confidential fiduciary relationship existed between Dean and his mother at the time of the execution of the deed. They urge that the trial court should have found a confidential relationship existed between Dean and his mother whereupon the burden would rest upon Dean to show the transaction was conducted in good faith and did not result from the exercise of undue influence on his part. See *Frame, Administrator v. Bauman,* 202 Kan. 461, 449 P.2d 525 (1969).

The mere relationship of parent and child does not raise a presumption of a confidential and fiduciary relationship. *Nelson, Administrator v. Dague,* 194 Kan. 195, 196, 398 P.2d 268 (1965); *Winkler v. Korzuszkiewicz (Shusky),* 112 Kan. 283, 286, 211 Pac. 124 (1922); *Clester v. Clester,* 90 Kan. 638, 135 Pac. 996 (1913). Neither does the fact that a gift of real estate is made by deed from a parent to a child in and of itself raise a presumption of over-reaching which would invalidate the deed. *Nelson, Administrator v. Dague,* 194 Kan. at 196-197.

Whether or not a confidential or fiduciary relationship exists depends on the facts and circumstances of each individual case. This court has refused, for that reason, to give an exact definition to fiduciary relations. *Nelson, Administrator v. Dague,* 194 Kan. at 197. This court has commented:

"Whether such a relationship is shown to exist is an evidentiary question. It is a question which must be determined in each case by the trier of the facts." *Wilkinson v. Cummings,* 194 Kan. 609, 612, 400 P.2d 729 (1965).

Blanche evidently inherited the property in Oklahoma from her parents. It appears they owned a quarter section with Blanche receiving one eighty-acre tract and her brother, Earl Hane, receiving the other. Earl had farmed the entire quarter section as a unit for over forty years and had remained in close contact with his sister during the entire period until her death. Earl and his wife, Ida, visited Blanche frequently and handled all the farming transactions and accountings with her. Both Earl and Ida testified that Blanche had told them for several years (even before the 1966 will was executed) that Dean was to have the farm and she was going to deed it to him.

It was also brought out through testimony of Earl and Ida Hane that Blanche had, in more prosperous times, lent money to all three children but that Opal and Noble had not repaid their debts.

This evidently irritated Blanche and was mentioned by her on several occasions. While there is conflicting testimony from appellants, the Hanes also testified they were present at the Junction City hospital on May 2 and 3, 1971, that Blanche appeared to be in complete control of her mental processes, and there was no question at that time concerning her ability to perceive and understand and know what was going on about her.

While it appears clear that Dean and Marion maintained a close and warm relationship with Blanche, the trial court found as a fact that no confidential fiduciary relationship existed between Dean and his mother. A confidential relationship is never presumed and the burden of proof is upon the party asserting it. *Paul v. Smith*, 191 Kan. 163, 380 P.2d 421 (1963).

The determination of whether a confidential relationship existed was one of fact and our scope of review is to ascertain whether there is substantial competent evidence to support the findings of the trial court. *Cersovsky v. Cersovsky*, 201 Kan. 463, 441 P.2d 829 (1968). Further, we are required to consider the evidence in its most favorable aspect in relation to the party who prevailed in the court below. *Riedel v. Gage Plumbing & Heating Co.*, 202 Kan. 538, 449 P.2d 521 (1969).

There is no doubt Dean stood in a much closer and more intimate relationship with his mother than either Opal or Noble, but such, in and of itself, does not necessarily establish a confidential relationship.

Although there is evidence to the contrary, the record reflects substantial competent evidence to support the trial court's findings of fact and conclusions of law.

"4. The court erred in failing to find that the grantees had possession of grantor's will at the time of grantor's death, the same providing for equal distribution of all real estate, and knowingly withheld it from the probate court in contravention of K.S.A. 59-618."

Within thirty days of Blanche's death, Robert K. Weary, the attorney who had represented Blanche for years prior to her death, mailed copies of the will to all three children. There appears to have been very little property, if any, other than the Oklahoma farm and there was discussion among all three children about avoiding probate of the estate.

The trial court found:

"4. There was no requirement on Dean and Marion Freden to probate the

Will, in light of the transfer of the property prior to her death. Noble Freden and Opal Curtis would have had the same obligation as they received a copy of the Will in June of 1971."

K.S.A. 59-616 provides no will shall be effectual unless admitted to probate. 59-617 requires that the will be submitted for probate within nine months of the death of the decedent. Prior to 1972, the time period was one year but the reduction in time has no bearing upon the question before the court. 59-618 provides in part that any person who has possession or *knowledge* of a will shall submit it for probate within the statutory time and further provides that *if a will is withheld then any innocent beneficiary may submit the will for probate within ninety days after such beneficiary has knowledge of such will and within five years of the death of the testator.*

There is no showing of any attempt by Opal or Noble to secure the admission of Blanche's will to probate; the time for doing so has long expired and appellants cannot now be heard to complain.

The judgment is affirmed.