(604 P.2d 1219)

No. 50,406

## In the Matter of the Estate of Rex Relihan, Deceased.

Petition for review denied March 7, 1980.

Opinion filed January 11, 1980.

*David H. Fisher,* of Fisher, Patterson, Sayler & Smith, of Topeka, for appellant/cross-appellee Estate of Rex Relihan.

*Arthur A. Glassman* and *James R. McEntire,* of Sloan, Listrom, Eisenbarth, Sloan & Glassman, of Topeka, for appellee/cross-appellant Mary Fair.

Before FOTH, C.J., ABBOTT and MEYER, JJ.

MEYER, J.: Rex Relihan (Rex) and appellee Mary Fair (Mary) were brother and sister. Their day-by-day activities demonstrated they had a close relationship. In 1971 Mary prepared three

hand-written deeds to certain real estate, with the grantee being Rex. She signed two of these deeds, but none of them were notarized or delivered. In 1974, at a time when Mary was quite ill, she had three more deeds prepared. She signed these before a notary public and they were delivered to Rex (again the grantee) and same were recorded. Rex died in June, 1975, and appellant is the administrator of his estate. Mary brought action against the estate for recovery of the "deeded" property. The trial court set aside the deeds finding that a confidential relationship existed, and that the estate did not meet its burden of proving lack of undue influence. Mary had, since the dates of the 1974 deeds, executed two wills—in neither of which was Rex a beneficiary, either legatee or devisee.

In substance, Mary claims there was more to the Rex and Mary relationship than that of brother and sister. She claims that a confidential relationship existed between them by reason of the following acts:

1. Rex visited Mary frequently—about three times weekly as long as his health permitted.

2. Rex, on occasions, received checks from Mary, which were blank both as to payee and as to amount. These were given to Rex for the purpose of paying Mary's bills, primarily those for utilities.

3. Rex's name was on Mary's checking account, as well as her savings account.

4. Rex undertook the general care and repair of Mary's home.

5. Rex performed many errands for Mary, and after he became too ill to do so, his daughter carried on with this function.

6. Rex accompanied Mary to the out-of-state funeral of her daughter.

Appellant counters by stating that taxes for the year 1974 and subsequent years were paid either by Rex or by appellant estate. Furthermore, appellant argues that Mary once questioned why tax notices were sent to her on the "deeded" properties when they no longer belonged to her. Appellant's principal position is that the facts, as found by the trial court and as supported by the record, do not support the finding that a confidential relationship existed between Mary and Rex and that therefore the burden of proving undue influence should have remained with appellee. Appellant argues that such a relationship must concern itself with more than ministerial functions and must, in fact, constitute a

financial relationship. Appellant bolsters this argument with Mary's testimony that she never discussed matters regarding disposition of real estate with Rex, nor did she rely on any other person to handle her financial or business affairs, until the time when she was in the hospital and hired Art Glassman, an attorney, to help her.

The essence of appellee's argument is that the district court made a finding that a confidential relationship did in fact exist, that such finding is based upon substantial competent evidence, and that, therefore, the burden of proof that there was no undue influence is upon appellant.

The existence or non-existence of a confidential or fiduciary relationship is an evidentiary question or finding of fact which must be determined from the facts in each case; and, therefore, the scope of apellate review is to ascertain only whether there is substantial competent evidence to support the finding of the trial court. *Cersovsky v. Cersovsky,* 201 Kan. 463, 468, 441 P.2d 829 (1968); *Wilkinson v. Cummings,* 194 Kan. 609, Syl. ¶ 3, 400 P.2d 729 (1965); *Fairbank v. Fairbank,* 92 Kan. 45, 139 Pac. 1011 (1914).

The scope of review of an appellate court from a finding of a trial court as to the existence or non-existence of a confidential relationship was again discussed in the recent Kansas Supreme Court decision of *Curtis v. Freden,* 224 Kan. 646, 585 P.2d 993 (1978). That case involved an action to set aside a deed to real property upon the grounds of incapacity of the grantor, undue influence, and breach of a confidential relationship by the grantees, and to bar the grantees from any share in the grantor's estate. The Supreme Court said, at page 652:

"The determination of whether a confidential relationship existed was one of fact and our scope of review is to ascertain whether there is substantial competent evidence to support the findings of the trial court. *Cersovsky v. Cersovsky,* 201 Kan. 463, 441 P.2d 829 (1968). Further, we are required to consider the evidence in its most favorable aspect in relation to the party who prevailed in the court below. *Riedel v. Gage Plumbing & Heating Co.,* 202 Kan. 538, 449 P.2d 521 (1969)."

The trial court made a number of findings of fact, the most important of which are set out above under subparagraphs 1 through 6 inclusive. The gist of the matter is that if the trial court was correct in finding a confidential relationship existed between Rex and Mary, then the burden of proof to prove lack of undue

influence was properly placed on appellant. See *Frame, Administrator v. Bauman,* 202 Kan. 461, 449 P.2d 525 (1969).

We note that several findings of fact made by the trial court would be found in most brother and sister relationships. Moreover, we note that various acts performed by Rex which do go beyond the usual brother-sister relationship are not of great financial consequence. On the other hand, we are persuaded that the collectivity of such acts as (1) cashing checks which were delivered to him by Mary with payee and amount left blank, (2) the presence of Rex's name on Mary's checking account, (3) Rex's name on Mary's savings account, and (4) control of maintenance and repair of Mary's residence, do constitute at least some dealing with financial matters.

We conclude there was substantial competent evidence to support the findings of the trial court and that we are bound thereby on appeal. *Curtis v. Freden,* 224 Kan. 646.

With candor, we admit this is an extremely close case, and base our decision in favor of appellee as we must do when appellant has failed to convince us of error of the trial court.

Having determined that the trial court did not err in finding that a confidential relationship existed between Rex and Mary, we turn next to the issue as to whether or not the trial court erred in its determination that appellant failed to prove an absence of undue influence.

The rules are clearly stated in *Frame, Administrator v. Bauman,* 202 Kan. 461:

"Where a transaction has been entered into between persons, one of whom stands in a confidential relationship to the other, the burden rests upon the person occupying such status to show that the transaction was conducted in good faith and did not result from the exercise of undue influence on his part." Syl. ¶ 5.

"Where good faith has been established on the part of one who benefits from a transaction and no undue influence has been exerted by him, and where the transaction is shown to have carried out the true and freely formed intentions of the party conferring the benefit, the law does not stigmatize the transaction as fraudulent and void simply because a confidential relationship may exist between the parties." Syl. ¶ 6.

"It is the trial court which determines, in the first instance, whether the presumption of undue influence existing by virtue of a confidential relationship has been satisfactorily overcome by the party on whom the burden rests, and the responsibility of this court on appeal is to ascertain whether the findings of the trial court are supported by substantial competent evidence; in making the latter determination, this court is required to consider the evidence in its entirety, and in the light most favorable to the party who prevailed in the court below." Syl. ¶ 8.

The trial court specifically found that "it has not been shown that Mary Fair truly and freely formed an intention to execute the three deeds she executed." The trial court noted that Mary's actions throughout indicated an intent to retain the property. She continued to live in one of the properties and to collect the rents and profits from the others. Also, she employed a Mr. Weaver to do extensive remodeling and repair work on the properties after the date of the 1974 deeds. She testified she did not recall executing them. Furthermore, she later left the property to Weaver by her will. Appellant failed to show by clear and convincing evidence that the transaction was the true and freely formed intention of the party conferring the benefits. The trial court had before it substantial competent evidence on which to base its conclusion that there was undue influence, and we are bound thereby on appeal. *Curtis v. Freden,* 224 Kan. 646. The trial court stated that the rule relevant to independent advice was a further reason for its ruling. The purpose of the independent advice rule was stated in *In re Estate of Carlson,* 201 Kan. 635, Syl. ¶ 5, 443 P.2d 339 (1968):

"The requirement of independent advice is designed to provide assurance that the aged or infirmed or otherwise dependent person conferring the benefit knew what he was doing and did it of his own free act and will, and to see that no undue advantage was taken of him."

While the rule governing the requirement of independent advice is not applied where the party upon whom the burden of proof is cast presents substantial evidence that the deed was made in good faith, not induced by undue influence, and for a valuable consideration, none of these situations are clearly present in this case. The trial court was thus correct in applying this standard as an additional reason for its decision.

The trial court found that the appellee would need to reimburse the appellant for taxes paid by appellant for 1974 and subsequent years. It is appellee's cross-appeal as to this ruling which gives rise to the third issue in this case. The issue can be stated as follows:

When a deed is set aside and the party who thought he owned the property paid taxes, is he entitled to have reimbursement for taxes paid on the property during the time he thought he owned it?

It is specifically noted that after the execution of the 1974

deeds, the tax statements were taken to Mary by Rex but she refused to pay those taxes, stating she no longer had a home and had paid the taxes for the last time. Thereafter, all the taxes were paid either by Rex or by his estate. The taxes so paid included those for 1974, 1975, and 1976. Additionally, during the pendency of this litigation, the parties stipulated that the estate of Rex Relihan should pay the 1977 taxes subject to reimbursement by Mary should she prevail in her attempt to set aside the three deeds. Clearly it would involve the unjust enrichment of Mary were we now to refuse reimbursements to the Rex Relihan estate for the payment of taxes for the years 1974 to 1977, inclusive. Under whatever theory one proceeds in this matter, a specific rule which covers the same is that "under the prevailing view the right of one who, under a mistaken belief of his ownership of land, has paid taxes thereon, to maintain an action to recover compensation from the person benefited . . . is upheld." 66 Am. Jur. 2d, Restitution and Implied Contracts § 127, p. 1060. See *Brookfield v. Rock Island Improvement Co.,* 205 Ark. 573, 169 S.W.2d 662 (1943); *Schleicher v. Schleicher,* 120 Conn. 528, 182 A. 162 (1935).

The judgment of the trial court is affirmed.