(164 P.3d 827)
No. 96,060

ESTATE OF ETHEL F. DRAPER, deceased, *Appellee*, v. BANK OF AMERICA, N.A., as Trustee of the ETHEL F. DRAPER IRREVOCABLE VOLUNTARY TRUST AGREEMENT DATED APRIL 8, 1982, *Appellee/Cross-appellee,* FIRST CHRISTIAN CHURCH OF OLATHE, KANSAS, *Appellant,* JANIS M. WALESKI MURPHY and MARY H. MOELLER, *Appellees/Cross-appellants,* UMB BANK, N.A., AMERICAN CANCER SOCIETY HEARTLAND DIV., and OLATHE MEDICAL CTR., *Appellees.*

Opinion filed July 27, 2007.

*Kurt S. Brack,* of Holbrook & Osborn, P.A., of Overland Park, for appellant First Christian Church of Olathe, Kansas.

*Michael R. Ong* and *Michelle M. Krambeck Burge,* of Law Office of Michael Ong, P.A., of Leawood, for appellees/cross-appellants Janis M. Waleski Murphy and Mary Helen Moeller.

*Barry D. Martin,* of Speer & Holliday, LLP, of Olathe, for appellee Estate of Ethel F. Draper.

Before MALONE, P.J., GREEN and MARQUARDT, JJ.

MARQUARDT, J.: First Christian Church of Olathe, Kansas (First Christian), Janis M. Waleski Murphy, and Mary Helen Moeller appeal the trial court's grant of summary judgment to the Estate of Ethel F. Draper (Estate). We reverse.

In April 1967, Clark Draper and Ethel Catlin executed an antenuptial agreement in contemplation of their marriage. Clark had three children from an earlier marriage; Ethel had no children. The antenuptial agreement stated that both Clark and Ethel had "substantial property and property rights" and if Ethel survived Clark, Ethel was required to maintain a valid will devising to each of Clark's sons not less than one-fourth of her estate. Clark executed a will leaving a substantial portion of his estate to Ethel should she survive him.

Clark died testate in January 1977 and Ethel received her share of his estate. In September 1977, Ethel executed an irrevocable trust whose successor trustee is UMB Bank, N.A. (UMB). This trust allowed Ethel to receive the income and corpus during her lifetime. Upon her death, the trust income and corpus were to be distributed to, among others: First Christian, The Kansas City Chapter of the American Cancer Society (American Cancer Society), Olathe Medical Center, Mary Helen Moeller, and Janis Waleski Murphy.

In April 1982, Ethel executed a will which divided her estate equally between Clark's three sons. That same day, Ethel created another irrevocable trust whose successor trustee is Bank of America. The remainder beneficiaries of this trust are identical to those listed in the 1977 UMB trust.

Ethel died in October 2002 leaving an estate of less than $10,000. The total assets in the two irrevocable trusts exceeded $1 million. Ethel's will was admitted to probate in January 2003.

In December 2003, Clark's son, Gerald, executor of Ethel's estate, filed a petition on behalf of the Estate against Bank of America and UMB claiming that Ethel exceeded the authority given her in the antenuptial agreement when she transferred the bulk of her assets to irrevocable trusts. The petition contends that the trust beneficiaries have a duty to transfer three-quarters of the trust assets back into the Estate. The petition claimed intentional fraud, implied fraud, breach of contract, and breach of fiduciary duty. In May 2004, the petition was amended to add the trust beneficiaries as defendants.

The American Cancer Society's answer to the petition claimed that the Estate's action was barred by the statutes of limitation and repose in K.S.A. 60-515, K.S.A. 60-511, and K.S.A. 60-513. The American Cancer Society filed a motion to dismiss based on these statutes. Eventually the other named defendants joined in this motion.

The Estate's response to the motion to dismiss was that none of the statutes cited could apply to the Estate, which exists as a separate entity from Ethel herself. The trial court agreed with the Estate and denied the motion to dismiss.

The Estate, First Christian, Waleski Murphy, and Moeller all filed motions for summary judgment. After considering arguments from counsel, the trial court concluded that the antenuptial agreement contained an implied duty which prevented Ethel from divesting Clark's sons of their share of the trust assets. The trial court determined that the antenuptial agreement created a life estate for Ethel in the marital property.

The trial court ruled that Ethel's transfers to the irrevocable trusts were void because the transfers of property out of her life estate exceeded her authority. The trial court granted the Estate's summary judgment motion and ordered that the trust property be placed in a constructive trust for Clark's sons. The other motions for summary judgment were denied. The American Cancer Society and Olathe Medical Center settled their claims and are not parties to this appeal. UMB and Bank of America are parties only to the extent that they administer the trusts. First Christian, Waleski Murphy, and Moeller appeal the trial court's decision.

On appeal, First Christian contends (1) that the trial court erred in ordering a constructive trust in favor of the Estate on the assets of the irrevocable trusts because it did not make a finding of fraud; (2) that K.S.A. 60-515 bars the action since it was commenced more than 1 year after Ethel's death; and (3) that Clark's sons knew of Ethel's trusts as early as 1985, which would bar the Estate's claims pursuant to the statute of repose. Waleski Murphy and Moeller argue that the cause of action accrued in 1977 when Ethel first transferred assets into an irrevocable trust.

All of the Estate's claims involve interpretation of the antenuptial agreement and Ethel's action.

When a motion to dismiss raises an issue concerning the legal sufficiency of a claim, the question must be decided from the facts pled in the petition. Disputed issues of fact cannot be resolved or determined on a motion to dismiss for failure of the petition to state a claim upon which relief can be granted. The question is whether, in the light·most favorable to plaintiff, and with every doubt resolved in plaintiff's favor, the petition states a valid claim for relief. Dismissal is justified only when the allegations of the petition clearly demonstrate plaintiff does not have a claim. *Halley v. Barnabe*, 271 Kan. 652, 656, 24 P.3d 140 (2001).

First Christian argues that the trial court erred by imposing a constructive trust on the irrevocable trust assets because the Estate cannot prove that Ethel committed constructive fraud. It claims she breached no legal duty.

Constructive fraud requires two elements beyond that of actual fraud. First, there must be a confidential relationship and second, that confidence must have been betrayed or a duty imposed by the relationship breached. *Kiley v. Petsmart, Inc.*, 32 Kan. App. 2d 228, 235, 80 P.3d 1179 (2003), *rev. denied* 277 Kan. 924 (2004). A "confidential relationship" refers to any relationship of blood, business, friendship, or association in which one of the parties reposes special trust and confidence in the other who is in a position to have and exercise influence over the first party. *Heck v. Archer*, 23 Kan. App. 2d 57, 63, 927 P.2d 495 (1996). The mere relationship between parent and child does not raise a presumption of a confidential and fiduciary relationship. *Curtis v. Freden*, 224 Kan. 646, 651, 585 P.2d 993 (1978). For purposes of imposing a constructive trust, a confidential relationship can be based on an agreement between the owner of property and another who will distribute the owner's property in a specified manner upon the owner's death. *Heck*, 23 Kan. App. 2d at 67.

The existence or nonexistence of a confidential or fiduciary relationship is an evidentiary question or finding of fact which must be determined from the facts in each case; and, therefore, the scope of appellate review is to ascertain only whether there is sub-

stantial competent evidence to support the finding of the trial court. *In re Estate of Relihan*, 4 Kan. App. 2d 277, 279, 604 P.2d 1219, *rev. denied* 227 Kan. 927 (1980). A confidential relationship is not presumed, and the burden of proving such a relationship existed rests upon the party asserting its existence. *Kampschroeder v. Kampschroeder*, 20 Kan. App. 2d 361, 365, 887 P.2d 1152, *rev. denied* 257 Kan. 1092 (1995).

The Estate never claimed there was a confidential relationship, and the trial court made no such finding. There was no proof of a confidential relationship between any of the parties. Where a confidential relationship has not been proved or even asserted, there can be no constructive trust.

In its decision, the trial court stated that it was required to read the four corners of the antenuptial agreement in order to ascertain the intent of the parties. To that end, the trial court was willing to "imply a duty" to Ethel to "refrain from divesting Clark's sons of their share of her estate," thereby "frustrating Clark's obvious intent" in signing the antenuptial agreement. Therefore, the trial court ruled that "the antenuptial must be interpreted as creating in Ethel a life estate in the marital property," and a life estate prevented Ethel from designating the residual beneficiaries in her irrevocable trusts.

On appeal, First Christian argues that the antenuptial agreement required Ethel to leave three-quarters of her estate to Clark's sons, not three-quarters of her assets. First Christian suggests that the use of the term "estate" rather than "assets" shows a deliberate choice by the parties. In addition, First Christian believes the trial court exceeded the plain language of the antenuptial agreement, where there is no mention of a life estate.

The interpretation and legal effect of written instruments are matters of law, and an appellate court exercises unlimited review. *McGinley v. Bank of America, N.A.*, 279 Kan. 426, 431, 109 P.3d 1146 (2005). Regardless of the construction given a written contract by the trial court, an appellate court may construe a written contract and determine its legal effect. *Unrau v. Kidron Bethel Retirement Services, Inc.*, 271 Kan. 743, 763, 27 P.3d 1 (2001).

If the language of a written instrument is clear and can be carried out as written, there is no room for rules of construction. Where contract terms are plain and unambiguous, the intention of the parties and the meaning of the contract are determined from the contract itself. *Zukel v. Great West Managers, LLC*, 31 Kan. App. 2d 1098, 1101, 78 P.3d 480 (2003), *rev. denied* 277 Kan. 928 (2004). Unambiguous contracts must be enforced according to their plain, general, and common meaning in order to ensure the intentions of the parties are enforced. When a contract is found to be unambiguous, we look only to the four corners of the agreement to determine the parties' intent, harmonizing the language therein if possible. *Boos v. National Fed'n of State High School Ass'ns*, 20 Kan. App. 2d 517, 524, 889 P.2d 797 (1995).

The antenuptial agreement required Ethel to execute and maintain a valid will. Ethel did that. The antenuptial agreement required Ethel to leave "not less than one fourth" of her estate "remaining after the payment of debts, administrative expenses, taxes and other legal obligations thereof," to each of Clark's sons. Ethel did that; in fact, Ethel left her entire estate to Clark's sons.

The antenuptial agreement is unambiguous. It contains no restrictions on Ethel gifting or inter vivos transfers of her property, and there is nothing in the language of the antenuptial agreement which restricts Ethel from creating irrevocable trusts.

The antenuptial agreement was executed in 1967. Forty years later, with both Clark and Ethel deceased, the trial court must abide by the clear language of the antenuptial agreement. There is no suggestion that Ethel's ownership rights were limited to a life estate. Ethel complied with the clear language of the antenuptial agreement and is not in breach of that contract. Therefore, the trial court erred by imposing a life estate on Ethel's property ownership.

The trial court read into the antenuptial agreement a duty of good faith and fair dealing. The trial court then extended this duty to prevent Ethel from "divesting Clark's sons of their share of her estate and frustrating Clark's obvious intent in making the contract."

Kansas courts imply a duty of good faith and fair dealing in every contract. Parties shall not intentionally and purposely do anything

to prevent the other party from carrying out his or her part of the agreement, or do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract. *Kansas Baptist Convention v. Mesa Operating Limited Partnership*, 253 Kan. 717, 725, 864 P.2d 204 (1993).

It is clear that all three of Clark's sons received "the fruits of the contract;" they split the entirety of Ethel's estate. The trial court erred by reading into the contract something which was not there and by implying that Ethel acted with bad faith. Therefore, the trial court erred by imposing limits on Ethel's rights to dispose of her assets during her lifetime.

Waleski Murphy and Moeller argue that the Estate's claims are time-barred due to the failure of one of the heirs to file a claim against Ethel's estate pursuant to K.S.A. 59-2239.

Resolution of this matter requires us to interpret the meaning of K.S.A. 59-2239. Interpretation of a statute is a question of law, and this court has de novo authority to review the trial court's decision. *Foster v. Kansas Dept. of Revenue*, 281 Kan. 368, 374, 130 P.3d 560 (2006).

K.S.A. 59-2239 requires all creditors to make demands against the estate within 4 months from the date of first publication of the notice. However, in this case, none of Clark's sons was disputing what was contained in the Estate. The entire purpose of this action is to collect assets which are outside of the Estate in Ethel's irrevocable trust. Therefore, any action against the Estate would have been futile, and compliance with K.S.A. 59-2239 is wholly unrelated to this action.

Waleski Murphy and Moeller claim that there is no statutory authority which allows the estate to bring an action for possession of the assets of an irrevocable trust, because the Estate had no standing to enforce the terms of the antenuptial agreement, as only Clark, Ethel, and Clark's sons were so authorized by the terms of the agreement.

The antenuptial agreement shows that only Clark, Ethel, and Clark's sons are parties to the agreement. We reject the theory that an estate could never marshal assets which have been placed in an irrevocable trust. However, we agree that under these circum-

stances and the provisions of this antenuptial agreement, there is nothing in the plain language of the agreement which allows Ethel's assets to be returned to the Estate.

Given our interpretation of the antenuptial agreement, First Christian's arguments regarding the trial court's ruling on the statutes of limitation and repose are moot.

Reversed.

GREEN, J., concurring: I concur with most of Judge Marquardt's thoughtful discussion of the issues in this case. Nevertheless, I also agree with Janis Wasleski Murphy and Mary Helen Moeller that Ethel's estate claims are time-barred because of the heirs' (Clark's sons') failure to timely assert their demand against Ethel's estate under K.S.A. 59-2239. Although Ethel's estate seeks a variety of remedies in this case, they are all based on Ethel's alleged breach of the antenuptial agreement between her and Clark Draper. It is undisputed that Clark's sons were the intended third-party beneficiaries of the antenuptial agreement. As a result, Clark's sons had a claim against Ethel to the extent that she failed to fulfill her obligations under the antenuptial agreement.

In addition, it is well-established that a decedent no longer has the individual capacity to respond in damages to torts, to pay debts, to carry out contracts, or to administer his or her estate, and the estate must meet the decedent's financial obligations. An individual who claims entitlement to all or to a part of a decedent's estate, whether based upon a tort, an oral or written contract, the decedent's will, or the statute of intestate succession, must recover, if at all, from the decedent's estate. *In re Estate of Reynolds*, 266 Kan. 449, 456-57, 970 P.2d 537 (1998); see also *Salvation Army v. Estate of Pryor*, 1 Kan. App. 2d 592, 601, 570 P.2d 1380 (1977) (" '[W]here a party seeks to enforce a contractual obligation to devise or bequeath a portion of a decedent's estate, the proceeding constitutes a demand against the estate and not a will contest.' "). Thus, because Ethel had died and could no longer be sued, Clark's sons' claims based upon Ethel's alleged breach of the antenuptial agreement should have been brought against Ethel's estate.

Accordingly, I would also reverse based on Ethel's estate claims being time-barred under K.S.A. 59-2239.